**LEAGUE OF WOMEN VOTERS OF CALIFORNIA, Henry Waxman, Pacifica Foundation, Plaintiffs,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Defendant.**

**No. CV–79–1562–MML.**

United States District Court, C.D. California.

July 11, 1983.

Center for Law in the Public Interest, Frederic D. Woocher, Lucas Guttentag, John R. Phillips, Los Angeles, Cal., for plaintiffs.

Stephen S. Trott, U.S. Atty., Stephen D. Petersen, Asst. Chief U.S. Atty., Los Angeles, Cal., Paul Blankenstein, Judith F. Ledbetter, J. Paul McGrath, Asst. Atty. Gen., Dept. of Justice, Washington, D.C., for defendant.

## ORDER DENYING PLAINTIFFS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES

LUCAS, District Judge.

On August 6, 1982 this Court entered summary judgment in favor of plaintiffs. *League of Women Voters of California v. FCC,* 547 F.Supp. 379 (C.D.Cal.1982). In the order granting summary judgment the Court indicated that plaintiffs were entitled to an award of costs and reasonable attorneys' fees. *Id.,* 577 F.Supp. at 388. Thereafter, defendant moved to alter or amend the judgment to delete the award of attorneys' fees. Plaintiffs opposed this motion and filed a timely application for an award of attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"). Plaintiffs' application and defendant's motion came on for hearing before the Court, the Honorable Malcolm M. Lucas, District Judge, presiding, on November 1, 1982. At oral argument the Court indicated that the award of attorneys' fees was inadvertently included in the August 6, 1982 order. Such an award was not appropriate in that plaintiffs had not applied for such an award at that time as required by 28 U.S.C. § 2412(d)(1)(B). The Court, therefore, orally ordered the award of attorneys' fees stricken from the judgment pursuant to F.R.Civ.P. 60. The Court then proceeded to hear plaintiffs' application, treating defend-

ants' papers in support of its motion to alter or amend the judgment as papers in opposition to plaintiffs' application. After careful consideration of the excellent briefs and oral argument presented by counsel for both parties, the Court denies plaintiffs' application for an award of attorneys' fees under the EAJA. Plaintiffs are, however, entitled to their costs of this action. 28 U.S.C. § 2412(a).

The EAJA provides that a prevailing party [1] in litigation against the United States or an agency or officer of the United States is entitled to an award of reasonable attorneys' fees "unless the Court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "After a prevailing party has submitted an application for an award, the burden of proving that a fee award should not be made rests with the Government." H.R.Rep. No. 1418, 96th Cong., 2d Sess. *reprinted in* [1980] U.S.Code Cong. & Ad.News 4984, 5011.

Plaintiffs succeeded in this litigation in establishing that a federal statute, 47 U.S.C. § 399,[2] was unconstitutional on its face. Although, as will be discussed fully below, defendant did not oppose plaintiffs throughout much of this litigation, defendant argues that even if it had vigorously defended the constitutionality of § 399 its position would have been "substantially justified" as a matter of law. That is, defendant contends that as a threshold "matter of law, an Executive agency is [substantially] justified in defending an act of Congress against Constitutional challenge." (Defendant's Memorandum of Points and Authorities in Support of Motion to Alter or Amend Judgment, [Defendant's Memorandum], page 11, lines 14–16.) In support of

this argument defendant notes that there is usually a strong presumption in favor of the constitutional validity of congressional action. Defendant further argues that "it is inconceivable that Congress itself intended for attorneys' fees to be assessed against an Executive agency that has done nothing more or less than [defend the constitutionality of statutes enacted by Congress.]" (Defendant's Memorandum, page 11, lines 24–27.)

■ Although it is certainly true that defense of a congressional statute from constitutional challenge will usually be substantially justified, the Court rejects defendant's argument that this is true as a matter of law. The language of the EAJA is clear: it applies to "any civil action [other than cases sounding in tort]." 28 U.S.C. § 2412(d)(1)(A). There is nothing in the statute itself or in its legislative history to support defendant's argument that attorneys' fees cannot be awarded in cases involving a constitutional challenge to a federal statute.[3]

The Court must, therefore, turn to the facts of this case to determine whether an award of attorneys' fees is warranted. The complex procedural history of this case has been set forth at length in the Court's order granting summary judgment. *League of Women Voters, supra,* 547 F.Supp. 380–383. However, a summary of this history will be useful here.

This action for declaratory relief was filed on April 30, 1979. The original complaint challenged two restrictions imposed upon noncommercial educational broadcasting stations by 47 U.S.C. § 399. Under this statute noncommercial educational broadcasting stations were prohibited both from

1. Defendant concedes that plaintiff Pacifica Foundation is a prevailing party within the meaning of the EAJA. Because the Court has determined that an award of attorneys' fees is not appropriate in this case, the Court does not need to address the more difficult question of whether plaintiff Henry Waxman and/or plaintiff League of Women Voters is a prevailing party.

2. See *League of Women Voters, supra,* 577 F.Supp. at 381 n. 2, for a discussion of the changes in the designation of this statute during the course of the litigation.

3. The Court notes, further, that the presumption in favor of constitutionality noted by defendants is reversed in some cases, in particular, in cases such as the present one. *See League of Women Voters, supra,* 547 F.Supp. at 384.

editorializing and from supporting or opposing candidates for political office. Plaintiffs contended that these prohibitions violated the First and Fifth Amendments. Defendant answered on July 30, 1979 alleging that plaintiffs were not entitled to the relief sought. An amended complaint was filed by stipulation of the parties on August 28, 1979 making a minor correction in the language of the original complaint. On September 12, 1979 defendant answered the amended complaint without significant change from the first answer filed.

The parties agreed that there were no genuine issues of material fact to be resolved and that the legal issues raised by the complaint could be resolved by motion for summary judgment. Plaintiff filed such a motion on September 24, 1979 and noticed it for hearing on November 5, 1979. On October 22, 1979 the parties submitted a stipulation continuing the hearing of this motion on the grounds that

> "[t]he attorney for the defendant, the United States Department of Justice, has determined to discontinue its defense of the constitutionality of [§ 399] ... and has so advised both Houses of Congress. An extension of time is required to enable the Congress to consider the matter, and to take such action within its power with regard to this case as it may deem proper."

Thereafter, the Senate, represented by its own counsel, sought leave to appear as *amicus curiae* and requested permission to file a motion to dismiss. Plaintiffs filed extensive papers in opposition to the Senate's motions. The Court granted leave for the Senate to appear as *amicus curiae* and permitted the filing of the Senate's motion to dismiss. Noting that there was a distinct likelihood that the defendant would not enforce § 399 and that defendant's counsel had not opposed plaintiff's motion for summary judgment, the Court dismissed the action on the grounds that there was no justiciable case or controversy. The Court, therefore, did not reach plaintiff's motion for summary judgment.

Plaintiffs appealed the order of dismissal. Defendant took no position on the appeal. Approximately one year after the appeal was filed but before the case was heard or a decision rendered, counsel for defendant, under the newly appointed attorney general, changed its position and decided to defend the constitutionality of § 399. The appellate court remanded the action for a determination of the effect of this change on the Court's dismissal. On remand the Court vacated its order of dismissal. The appeal was subsequently dismissed. The Senate was given leave to withdraw from the litigation.

By order of June 18, 1981, the Court again set plaintiffs' motion for summary judgment on calendar and ordered the parties to file supplemental briefs. Several days before plaintiffs' motion was to be argued to the Court, Congress amended § 399 to limit significantly the statute's ban on editorializing. In light of this change, the Court continued plaintiff's motion, permitted plaintiff to file an amended complaint reflecting the amendment of § 399, and permitted the filing of further supplemental briefs.

On October 2, 1981 plaintiffs filed an amended complaint. In this complaint, however, plaintiffs dropped their challenge to that portion of § 399 which had not been amended (i.e., that portion which prohibited all public broadcasters from supporting or opposing political candidates) and restricted their constitutional challenge to the newly amended and limited ban on editorializing. On this issue plaintiffs' First Amendment challenge was successful.

As indicated above, the EAJA mandates an award of attorneys' fees to the prevailing party in a civil action brought by or against an agency of the United States "unless the position of the United States was substantially justified or ... special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The phrase "substantially justified" has been construed in this and other Circuits to be a reasonableness test. *See Foster v. Tourtellotte,* 704 F.2d 1109, 1111–12 (9th Cir.1983).

The present case presents an unusual framework for the application of this standard in that the United States was involved both as a party, through defendant FCC, and as *amicus curiae,* through the Senate. The papers filed by the parties focus primarily on defendant's position in this litigation. This is appropriate in that the position of the Senate was clearly reasonable.

■ The Senate's role in this litigation was limited to that of *amicus curiae.* As a friend of the Court, the Senate assisted the Court in resolving the difficult question of whether this action presented a justiciable case or controversy. The Senate did not become involved in the merits of plaintiff's constitutional challenge. When it became clear that a justiciable controversy had developed, the Senate withdrew from the litigation. Under these circumstances, the Court concludes that the Senate's position was reasonable and, thus, substantially justified. Therefore, no award of attorneys' fees may be predicated upon the Senate's role in this litigation.

The Court must now consider the reasonableness of the "position of the United States" insofar as defendant FCC is concerned. This is a difficult task under the highly unusual facts of this case.

■ It is important to note at the outset that this litigation was initiated by plaintiff in an effort to obtain a declaration that § 399 was unconstitutional. The lawsuit was not necessitated by any affirmative action of defendant. Although defendant initially filed an answer denying plaintiffs' entitlement to the relief sought, defendant did not oppose plaintiffs' motion for summary judgment, filed less than five months after the action was commenced. Thus, as soon as the merits of plaintiffs' claims were brought before the Court, defendant conceded the correctness of plaintiffs' legal argument and did everything in its power to assist plaintiffs in obtaining the relief sought. It should be emphasized that defendant had no power to grant plaintiff the declaratory relief sought. Defendant was faced with an unambiguous federal statute. It was not possible to interpret the clear language of § 399 so as to remedy the perceived constitutional defect. Defendant did not oppose plaintiffs' motion for summary judgment and indicated that it would, in essence, not enforce § 399 should plaintiff Pacifica choose to violate it. It could do no more.

The EAJA is intended "to caution agencies to carefully evaluate their case and not to pursue those which are weak and tenuous." H.R.Rep. No. 1418, 96th Cong., 2d Sess. (1980), *reprinted in* [1980] U.S.Code Cong. & Ad.News 4984, 4993. This is precisely what defendant did in this case.

This case is easily distinguished from the cases cited by plaintiffs in which attorneys' fees were awarded despite the fact that the United States conceded the incorrectness of its position early in the litigation. In *United States v. Pomp,* 538 F.Supp. 513 (M.D. Fla.1982), cited by plaintiff, the action was initiated by the United States to recover a tax penalty and then dismissed when the United States determined that defendant was not liable for the penalty. Clearly this is not apposite to the present case.

Plaintiff also cites *Ocasio v. Schweiker,* 540 F.Supp. 1320 (S.D.N.Y.1982) and *Photo Data, Inc. v. Sawyer,* 533 F.Supp. 348 (D.D. C.1982) in support of its argument. In *Ocasio* plaintiff sought to obtain social security benefits which had been unlawfully withheld due to an erroneous interpretation of the relevant statute by the Social Security Administration. After exhausting her administrative remedies, plaintiff sought judicial review. Counsel for the government conceded that plaintiff was entitled to the benefits and entered into a stipulation which "corrected the Agency's interpretation" of the relevant statute. In *Photo Data* the government also settled an action based on allegations of unlawful agency action. In that case a government agency had found that the low bidder on one of its contracts was "nonresponsible" and, therefore, not entitled to the award of a certain contract. The bidder filed suit and the parties shortly thereafter entered into a stipulation pursuant to which the agency rescinded its finding of nonresponsibility.

In both of these cases the award of attorneys' fees was based on a finding that the underlying agency action was not substantially justified, not on a finding that the position of the United States was unreasonable in settling the subsequent litigation. In the present case there is no underlying unreasonable agency action upon which an award of attorneys' fees could be predicated.[4]

The Court concludes that because defendant did not initially oppose plaintiff in any substantial manner the "position of the United States" in the initial stages of this litigation was reasonable and, therefore, substantially justified.

As indicated above, plaintiff appealed this Court's order terminating the initial phase of this litigation. Consistent with its earlier stance, defendant took no position on appeal. This "position" was also reasonable. This stage of the litigation was begun and maintained solely due to plaintiffs' desire to obtain a judicial declaration of the statute's unconstitutionality. This relief could not have been provided by defendant.

Of course, as plaintiffs emphasize, defendant changed its position approximately one year later, under the new attorney general, and decided to defend the constitutionality of § 399. This change in position must be viewed, however, in light of the subsequent amendment of § 399 and the limitation of the scope of this litigation by plaintiffs shortly thereafter.

As discussed above, Congress amended § 399 less than four months after defendant changed its position with respect to § 399. The new statute, which defendant continued to defend, was apparently a Congressional attempt to remedy the perceived constitutional defect in § 399's ban on edi-

torializing. Plaintiffs then amended their complaint to focus their attack solely on the amended portion of § 399. Thus, the dispute on which plaintiffs ultimately prevailed and the statute which defendant ultimately defended were quite different from those which were at issue when this litigation began.

The Court finds that defendant's defense of plaintiffs' limited challenge to the amended § 399 was also reasonable. The amendment of the statute was apparently intended as an effort to remedy the perceived constitutional defect in the statute. It was reasonable for defendant to seek a judicial determination as to whether this effort had been successful. The standard of substantial justification does not require defendant to show that it had a substantial probability of prevailing on the defense. H.R.Rep. No. 1418, 96th Cong., 2d Sess. (1980), *reprinted in* [1980] U.S.Code Cong. & Ad.News 4984, 4990. Defendant is only required to show that the decision to defend the statute served some legitimate, reasonable ends. The Court concludes that defendant has made such a showing. Plaintiffs' application for attorneys' fees must, therefore, be denied.

■ The EAJA also permits the Court to decline to award attorneys' fees where "special circumstances would make an award unjust." 28 U.S.C. § 2412(d)(1)(A). It appears that this provision in the Act was intended primarily as a "safety valve" to be used where the government advanced "novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts." H.R.Rep. No. 1418, 96th Cong., 2d Sess. (1980), *reprinted in* [1980] U.S.Code Cong. & Ad.News 4984,

---

**4.** The Court notes in addition that there is some question as to the correctness of the analysis followed in these cases. It is not yet clearly established whether "the position of the United States" refers solely to the post-complaint stage or whether the pre-complaint stage may also be considered. *See Goldhaber v. Foley,* 698 F.2d 193, 196 (3d Cir.1983); *Broad Avenue Laundry and Tailoring v. United States,* 693 F.2d 1387, 1390–91 (C.A.Fed.1982); *Environmental Defense Fund, Inc. v. Watt,* 554 F.Supp.

36, 40–41 (E.D.N.Y.1982). The court in *Environmental Defense Fund, supra,* noted that "where the government settle[s] a case shortly after it [is] initiated, the difference [between the "post-complaint only" and the "pre- or post-complaint" approach] may prove to be critical." *Id.,* 554 F.Supp. at 40. The present case clearly can involve only the post-complaint stage insomuch as plaintiff filed the complaint prior to any action by defendant.

4990. It is clear that this rationale would not apply in the present case. However, the legislative history also suggests that this "safety valve" may be used in other circumstances where "equitable considerations dictate an award should not be made." *Id.* The Court has carefully considered all of the facts and circumstances surrounding this unusual litigation. Defendant did not initiate this litigation either directly or indirectly. Defendant did not oppose plaintiffs' motion for summary judgment filed very early in the litigation. Plaintiffs kept the litigation alive by appealing the Court's order of dismissal. Defendant took no position on appeal. The ultimate defense of plaintiffs' limited challenge to the amended § 399 was reasonable. Under these special circumstances, the Court concludes that an award of attorneys' fees would be unjust. This conclusion provides an alternate basis for the Court's denial of plaintiff's application for such an award. Plaintiffs shall, however, recover the costs of this action. 28 U.S.C. § 2412(a).

IT IS SO ORDERED.