**LEAGUE OF WOMEN VOTERS OF CALIFORNIA, et al.,
Plaintiffs-Appellants,**

**and**

**Pacifica Foundation, and Henry Waxman, Plaintiffs,**

**v.**

**FEDERAL COMMUNICATIONS COMMISSION, Defendant-Appellee.**

No. 83–6299.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1986.

Decided Sept. 2, 1986.

**1256**

Fredric D. Woocher, Los Angeles, Cal., for plaintiffs-appellants.

Michael Jay Singer, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before KENNEDY and SCHROEDER, Circuit Judges, and ORRICK,* Senior District Judge.

## OPINION

SCHROEDER, Circuit Judge.

Appellants in this attorneys' fees appeal are the successful litigants in a federal court action challenging the constitutionality of 47 U.S.C. § 399(a), later styled 47 U.S.C. § 399, which regulated certain activities of noncommercial broadcasting stations. The plaintiffs filed the underlying action in federal court in 1979, and the Supreme Court in *Federal Communications Commission v. League of Women Voters of California,* 468 U.S. 364, 104 S.Ct. 3106, 82 L.Ed.2d 278 (1984), held that the provision violated the first amendment.

The plaintiffs sought attorneys' fees following the district court's original ruling in their favor. *League of Women Voters of*

*California v. Federal Communications Commission,* 547 F.Supp. 379 (C.D.Cal. 1982). The district court denied the request, holding that the government's position was "substantially justified" so as to preclude the award of fees under 28 U.S.C. § 2412(d)(1)(A). *League of Women Voters of California v. Federal Communications Commission,* 568 F.Supp. 295 (C.D.Cal. 1983). The appeal to this court from that denial was stayed pending completion of the Supreme Court proceedings. We now review the district court's order denying fees.

Although the district court's order was of necessity entered before the Supreme Court had the final say on the merits of the case and before this court had established the test for determining whether the government's position is substantially justified, *see Rawlings v. Heckler,* 725 F.2d 1192 (9th Cir.1984), we conclude that the district court's analysis was basically sound.

There is a preliminary issue of our jurisdiction. The case was before this court previously on the government's motion to dismiss. That motion asserted that jurisdiction to consider the attorneys' fees issue was in the Supreme Court and not in this court. We rejected that contention. *League of Women Voters of California v. Federal Communications Commission,* 751 F.2d 986 (9th Cir.1985). The government renews that contention now but has made no showing which would compel us to reconsider the original decision. *See, e.g., Moore v. Jas. H. Matthews & Co.,* 682 F.2d 830, 834 (9th Cir.1982) (law of the case will be departed from only if " 'the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice' ") (quoting *White v. Murtha,* 377 F.2d 428, 432 (5th Cir.1967) ).

* Honorable William H. Orrick, Jr., Senior United States District Judge for the Northern District of

California, sitting by designation.

The availability of attorneys' fees in this case is governed by the Equal Access to Justice Act (EAJA), which provides that in an action against the United States a prevailing party, other than the United States, is entitled to recover attorney's fees "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis both in law and fact, no award will be made." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10, *reprinted in* 1980 U.S. Code Cong. & Ad. News 4984, 4989. Our circuit has adopted this test of reasonableness. *See, e.g., Edwards v. Heckler,* 789 F.2d 659, 665 (9th Cir.1986).

Following the passage of the EAJA, there has been some division of authority concerning whether reasonableness should be measured solely by looking to the government's position asserted in the litigation, *see, e.g., Spencer v. NLRB,* 712 F.2d 539 (D.C.Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984), or whether the underlying action being challenged and prelitigation conduct also should be considered, *see, e.g., National Resources Defense Council, Inc. v. U.S. Environmental Protection Agency,* 703 F.2d 700, 707 (3d Cir.1983). The rule in this circuit was clarified when we decided that "the remedial purpose of the EAJA is best served by considering the totality of the circumstances prelitigation and during trial." *Rawlings v. Heckler,* 725 F.2d 1192, 1196 (9th Cir.1984).

## PROCEDURAL BACKGROUND

The plaintiffs, which included the League of Women Voters, Congressman Henry Waxman, and Pacifica Foundation, a nonprofit organization that owns and operates several noncommercial educational broad-casting stations, filed this action seeking a judgment declaring unconstitutional section 399(a) of the Public Broadcasting Act, 47 U.S.C. § 399(a), and an injunction against FCC enforcement of that provision. At the time the action was filed, the provision prohibited noncommercial educational broadcasting stations from editorializing and supporting or opposing candidates for political office. The Department of Justice, after answering the complaint, declined to defend the constitutionality of the statute, and a number of procedural maneuvers took place both on and off the litigation stage.

One of the key events was the decision of Congress in 1981 to amend and narrow the statute. The amendment had the effect of limiting the ban on editorializing to stations receiving grants from the Corporation for Public Broadcasting. The ban on supporting or opposing political candidates was left essentially unchanged. The entire amended provision was redesignated as 47 U.S.C. § 399.

Shortly before the enactment of the amendments, the Justice Department, now part of a new administration, reversed its earlier position and decided to defend the statute's constitutionality. It was the amended statute which it eventually actively defended, however, and it was that version which the Supreme Court struck down in a five-to-four decision. *Federal Communications Commission v. League of Women Voters of California,* 468 U.S. 364, 104 S.Ct. 3106, 82 L.Ed.2d 278 (1984).

The procedural history of this case is significant to our analysis of the reasonableness of the government's position, because during the course of the litigation's pendency in the district court, both the statute at issue and the position of the government with respect to defending it changed. The precise procedural history of the case is therefore set out in the margin.[1]

---

**1.** 1. The action for declaratory relief was filed on April 30, 1979.

2. The FCC answered on July 30, 1979 and alleged that the plaintiffs were not entitled to the relief sought.

## DISCUSSION

■ We review the district court's conclusion that an award of attorney's fees is inappropriate in this case under the abuse of discretion standard. *See, e.g., Edwards v. Heckler,* 789 F.2d 659, 665 (9th Cir.1985); *Rawlings v. Heckler,* 725 F.2d 1192, 1194 (9th Cir.1984).

■ In analyzing the reasonableness of the government's position under the "totality of the circumstances" test, we must look both to the position asserted by the government in the trial court as well as the nature of the underlying government action at issue. *See, e.g., Underwood v. Pierce,* 761 F.2d 1342, 1345 (9th Cir.1985) (per curiam); *Rawlings v. Heckler,* 725 F.2d 1192, 1196 (9th Cir.1984); *accord Iowa Express Dis-*

*tribution, Inc. v. NLRB,* 739 F.2d 1305, 1309 (8th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 595, 83 L.Ed.2d 704 (1984); *National Resources Defense Council, Inc. v. U.S. Environmental Protection Agency,* 703 F.2d 700, 707 (3d Cir.1983).[2] Applying this test, we have held that the failure of the Secretary of Housing and Urban Development to change his position and disburse funds for a congressionally mandated operating subsidy, despite having lost several cases involving nearly identical facts, was unreasonable. *Underwood,* 761 F.2d at 1346. The Eighth Circuit has also adopted this approach, remanding for a district court to consider the reasonableness of pretrial offers of just compensation in an eminent domain case. *United States v. 341.45*

---

3. The plaintiffs filed an amended complaint on August 28, 1979.

4. The FCC answered the amended complaint on September 12, 1979.

5. On October 22, 1979, the parties stipulated to a continuance of the proceedings on the ground that the Justice Department had determined to discontinue its defense of the constitutionality of the challenged statute.

6. On January 16, 1980, the United States Senate moved to appear as *amicus curiae* in order to defend the statute. At the same time, it moved to dismiss the complaint on the ground that the Justice Department's refusal to defend the constitutionality of the statute made the suit unripe for resolution.

7. On March 11, 1980, the district court granted the Senate's motion to dismiss.

8. On April 8, 1981, during the pendency of the appeal of this dismissal, the FCC filed a motion to vacate and remand on the ground that the new attorney general had determined to defend the constitutionality of the challenged statute. The Court of Appeals did remand to the district court for consideration of this change in circumstances.

9. On June 18, 1981, the district court vacated its dismissal order and set a schedule for briefing and argument of the plaintiffs' motion for summary judgment.

10. On August 13, 1981, three days prior to the scheduled oral argument, Congress amended the statute to limit its ban on editorializing.

11. As a result of this significant development, the plaintiffs' summary judgment motion was continued and plaintiffs were permitted to file an amended complaint.

12. On August 6, 1982, the district court granted summary judgment in favor of the plaintiffs.

13. On September 3, 1982, the FCC appealed this ruling to the Supreme Court.

14. On July 11, 1983, the district court denied the plaintiffs' motion for an award of attorney's fees under 28 U.S.C. § 2412.

15. The plaintiffs appealed this ruling to the Ninth Circuit, which stayed the appeal pending the issuance of the Supreme Court's decision on the merits.

16. On July 2, 1984, the Supreme Court affirmed the district court's grant of summary judgment in a five-to-four decision.

17. On January 8, 1985, a motions panel held that this court has jurisdiction to consider the plaintiffs' appeal from the denial of attorney's fees. *League of Women Voters of California v. Federal Communications Commission,* 751 F.2d 986 (9th Cir.1985).

18. On January 7, 1986, this appeal was ordered submitted.

2. A number of other circuits have adopted the so-called "litigation position" approach. *See, e.g., Russell v. National Mediation Board,* 764 F.2d 341, 350–52 (5th Cir.1985); *Ashburn v. United States,* 740 F.2d 843, 849 (11th Cir.1984); *Boudin v. Thomas,* 732 F.2d 1107, 1115 (2d Cir.1984); *United States v. 2,116 Boxes of Boned Beef,* 726 F.2d 1481, 1487 (10th Cir.), *cert. denied sub nom., Jarboe-Lackey Feedlots, Inc. v. United States,* — U.S. —, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984); *Spencer v. NLRB,* 712 F.2d 539, 546–57 (D.C.Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984); *Tyler Business Services, Inc. v. NLRB,* 695 F.2d 73, 75–76 (4th Cir.1982); *Broad Avenue Laundry & Tailoring v. United States,* 693 F.2d 1387, 1390–91 (Fed.Cir. 1982). These cases are not so much rejections of a totality of the circumstances approach as they are repudiations of the notion that the court need only look to the reasonableness of the underlying action.

*Acres of Land,* 751 F.2d 924, 940 (8th Cir. 1984).

This case is unusual in many respects, not the least of which is that the underlying government conduct is not an administrative action of the Executive branch, but rather is a statute enacted by Congress. We therefore consider initially the government's contention that that fact alone is dispositive and that, regardless of the nature of the legislation or the rationality of the defense interposed on its behalf by the Justice Department, the government's position must be held "reasonable" whenever the underlying dispute is over the constitutionality of a statute.

■ The district court correctly observed that although the defense of a congressional statute from constitutional challenge will usually be substantially justified, *see Grace v. Burger,* 763 F.2d 457, 458 n. 5 (D.C.Cir. 1985) (situations in which the government's defense of the constitutionality of a federal statute is not substantially justified should be exceptional), neither the language of the EAJA nor its legislative history support the argument that this is true as a matter of law. *League of Women Voters of California v. Federal Communications Commission,* 568 F.Supp. at 297. The EAJA applies to "any civil action (other than cases sounding in tort)." 28 U.S.C. § 2412(d)(1)(A). There are no exceptions for constitutional attacks on statutes.

Rather, the legislative history supports the availability of fees when constitutional rights are vindicated. An important purpose of the EAJA was to eliminate the economic deterrent faced by individuals who wish to vindicate their rights. As the House Report states:

The bill rests on the premise that certain individuals, partnerships, corporations and labor and other organizations may be deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights. The economic deterrents to contesting governmental action are magnified in these cases by the disparity between the resources and expertise of these individuals and their government. The purpose of the bill is to reduce the deterrents and disparity by entitling certain prevailing parties to recover an award of attorney fees, expert witness fees and other expenses against the United States, unless the Government action was substantially justified.

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5–6, *reprinted in* 1980 U.S. Code Cong. & Ad. News 4984, 4984. Our court has recognized that "the debate in the House and Senate unambiguously expresses the fundamental purpose of the Act—to prevent private individuals from being deterred from challenging government action because of the threat of high litigation expenses." *United States v. 101.80 Acres of Land,* 716 F.2d 714, 720 (9th Cir.1983). This purpose would be frustrated by a ruling that the Justice Department's decision to defend the constitutionality of a statute is reasonable regardless of whether the statute itself might reasonably be thought to be constitutional. We therefore consider, in determining the appropriateness of an award of attorneys' fees, both the reasonableness of the statute and the reasonableness of the conduct of the government in this litigation attacking it.

■ There were at least two distinct phases of the litigation. In the first phase, the plaintiffs were attacking an underlying governmental action, i.e., the enactment of a statute, which on its face was at least arguably a flagrant violation of the first amendment. We need not decide, however, whether active defense of this statute would have been reasonable, and therefore substantially justified, since the government did not attempt to defend the statute and did not initially oppose the plaintiffs in any substantial manner. As the district court observed, the defendant was not in a position to give the plaintiffs the declaratory relief that they sought, and it aided the plaintiffs in their endeavor in every way that it could.

During the second phase of the litigation, the government did defend the action. But

throughout most of that period, it was defending an amended statute which Congress had passed in an attempt to remedy the perceived constitutional defect in the original statute. The constitutionality of the amended statute is a question upon which reasonable minds could differ, as evidenced by the five-four division in the Supreme Court. *See League of Women Voters*, 468 U.S. 364, 104 S.Ct. 3106, 82 L.Ed.2d 278. Looking to both the underlying governmental action and the government's litigation position, as the totality of the circumstances test tells us we should, we, like the district court, must conclude that the government's position in this case was substantially justified.

Plaintiffs point out that during the approximately four-month period between April 1981, when the Justice Department changed its position and decided to defend the action, and August 1981, when the amendments were enacted, the government was in the position of actively defending an unreasonable statute. Even if we were to agree that this was a brief lapse from the standards of reasonableness, it would not support plaintiffs' claim that an award of attorneys' fees is justified in the totality of the circumstances. Moreover, we agree with the district court that the decision of the new attorney general to defend the constitutionality of section 399 must be viewed in the light of the amendments to the Act which were pending for much of the four month period at issue. *League of Women Voters*, 568 F.Supp. at 300.

■ Plaintiffs also point to the participation of the Senate in this action and suggest that attorneys' fees should be awardable against it for its part in the proceedings.[3] However, we again agree with the district court that the Senate's role was limited to that of amicus curiae, assisting the court in deciding whether the action presented a justiciable case or controversy, and that its position was thus substantially justified. *League of Women Voters*, 568 F.Supp. at 299.

3. The Senate's participation is described in note 1.

Accordingly, the order of the district court denying attorneys' fees is affirmed.