NATIONAL WILDLIFE FEDERATION,
Idaho Wildlife Federation, Petitioners,

and

The Nez Perce Tribe,
Intervenor–Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent.

No. 84–7325.

United States Court of Appeals,
Ninth Circuit.

March 16, 1989.

 

Before BROWNING and ALARCON, Circuit Judges, and STEPHENS,* District Judge.

JAMES R. BROWNING, Circuit Judge.

The National Wildlife Federation and the Idaho Wildlife Federation petitioned this court to review the issuance of seven preliminary permits by the Federal Energy Regulatory Commission under the Federal Power Act, 16 U.S.C. §§ 791a–825r (1982) ("FPA"). We vacated and remanded to the Commission. *National Wildlife Fed'n v. FERC*, 801 F.2d 1505 (9th Cir.1986). The Federations now seek attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (1982 & Supp.1987) ("EAJA").

### I.

In *Tulalip Tribes v. FERC*, 749 F.2d 1367, 1368 (9th Cir.1984), this court read 28 U.S.C. § 2412(d)(1)(A), which allows attorney's fees "in addition to any costs awarded," to forbid an award of attorney's fees where costs are barred by statute, as they are by § 317 of the Federal Power Act, 16 U.S.C. § 825p.

However, after *Tulalip Tribes*, Congress amended § 2412(d)(1)(A) by adding the underlined phrase:

Except as otherwise specifically provided by statute, a court shall award to a pre-vailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States....

Equal Access to Justice Act, Extension and Amendment § 2(a)(2), Pub.L. No. 99–80, 99 Stat. 183, 184 (1985).

Although the amended section does not expressly state fees are available in the absence of costs, the House Committee on the Judiciary said:

The language of section 2412(d)(1)(A) expresses the view that prevailing parties shall be awarded attorney's fees and, when available, costs as well. This interpretation ratifies the approach taken by four circuits. [citations] Thus, the Committee rejects the interpretations of the statute by the 9th Circuit. See *Tulalip Tribes of Washington v. Federal Energy Regulatory Commission*, 749 F.2d 1367 (9th Cir.1984).

H.R.Rep. No. 120, 99th Cong., 1st Sess., Pt. 1, at 17, *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 145.

The amendment specifically allows fee awards in actions for judicial review of agency decisions, precisely the type of action involved in *Tulalip Tribes* and in this case. The amendment could not have been intended to modify only the clause that precedes it, as section 2412(a), which contains language quite similar to that clause, was not similarly amended.

We conclude the amendment reflects congressional intent to overrule *Tulalip Tribes*. But see *Hirschey v. FERC*, 777 F.2d 1, 7 (D.C.Cir.1985) (Scalia, J., concurring).

### II.

The Commission argues that because the Tribe is an intervenor rather than a party, an award of attorney's fees is prohibited by

---

* Honorable Albert Lee Stephens, Jr., Chief Judge Emeritus, United States District Court for the Central District of California, sitting by designation.

**544**

§ 502 of the Energy and Water Development Appropriation Act, enacted on December 22, 1987 as part of the Continuing Appropriations Resolution for Fiscal Year 1988 § 502, Pub.L. No. 100–202, 101 Stat. 1329–1, 1329–129 (1987). That section provided:

> None of the funds in this Act shall be used to pay the expenses of, or otherwise compensate, parties intervening in regulatory or adjudicatory proceedings funded in this Act. This prohibition bars payment to a party intervening in an administrative proceeding for expenses incurred in appealing an administrative decision to the courts.

■ Contrary to the Commission's contention, section 502 does not prohibit an award of attorney's fees; it only prohibits use of "funds in th[at] Act" to pay such an award. For the same reason, section 502 does not relieve the Commission of the obligation to pay an award; the Commission may pay an award from other funds. *See* 28 U.S.C. § 2412(d)(4) ("Fees and other expenses awarded under this subsection to a party shall be paid by any agency over which the party prevails from *any* funds made available to the agency by appropriation or otherwise.") (emphasis added).

In any event, Congress deleted the second sentence of § 502 when it appropriated funds for fiscal 1989. *See* 1989 Energy and Water Development Appropriations Act § 502, Pub.L. No. 100–371, 102 Stat. 857, 874 (1988). An award of attorney's fees is therefore payable from funds in the 1989 act.

### III.

The Federations must establish they were "prevailing part[ies]" in the underlying suit. 28 U.S.C. § 2412(d)(1)(A). As the Court said in *Hensley v. Eckerhart:*

> A typical formulation is that plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation

which achieves some of the benefit the parties sought in bringing suit.

461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (internal quotation omitted).[1] A prevailing party is one who succeeds on any significant issue even though other issues are unreached, remanded, or prove unsuccessful. *Escobar Ruiz v. INS,* 787 F.2d 1294, 1297–98 (9th Cir.1986).[2]

In the proceedings below, the Federation contended the Commission was required to take a number of actions before issuing the preliminary permits challenged here. The Commission refused to take these steps, the Director of the Office of Electric Power Regulation issued the preliminary permits, and the Commission rejected the Federations' appeal and request for rehearing. 801 F.2d at 1506.

On review in this court, the Federations challenged the Commission's decision on five theories: (1) the Commission's refusal to adopt a comprehensive plan and to fashion a coordinated study process for the Salmon River Basin violated the FPA; (2) the Commission violated the Pacific Northwest Electric Power Planning and Conservation Act, 16 U.S.C. §§ 839—839h (1982) ("Northwest Act"), by failing to ensure "equitable treatment" of fish and wildlife; (3) the Commission violated the Northwest Act by failing to consider the Fish and Wildlife Program promulgated by the Northwest Power Planning Council; (4) the decision to issue permits without first preparing an environmental impact statement violated the National Environmental Policy Act, 42 U.S.C. §§ 4321–4347 (1982) ("NEPA"); and, (5) the decision violated the Nez Perce Treaty, 12 Stat. 957 (1855), by interfering with the Tribe's treaty right to take fish. 801 F.2d at 1506–07, 1513–15.

We did not reach the second, fourth, and fifth claims, *id.* at 1515, and therefore the Federations cannot be deemed to have prevailed on them.

---

**1.** *Hensley* involved a fee award under 42 U.S.C. § 1988, but "prevailing party" is defined in the same way under EAJA. *See McQuiston v. Marsh,* 707 F.2d 1082, 1085 (9th Cir.1983).

**2.** *Ruiz* was vacated and reconsidered by an en banc panel, 818 F.2d 712 (9th Cir.1987), but the en banc panel explicitly affirmed the three-judge panel's analysis of the "prevailing party" issue. 838 F.2d 1020, 1029 (9th Cir.1988) (en banc).

■ With regard to the first claim, we found no evidence to support the Commission's decision not to formulate a comprehensive plan and a coordinated study process for the basin and were thus "unable to determine on the present record whether the Commission's decision [was] 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* at 1511 (quoting 5 U.S.C. § 706(2)(A)). Accordingly, we vacated the challenged permits and remanded the matter to the Commission without deciding whether the FPA required the comprehensive plan and coordinated study process the Federations sought. *Id.* at 1512–13.

We conclude this victory is insufficient to establish the Federations as "prevailing part[ies]" under EAJA. While fees may be granted under EAJA prior to final judgment, a party must win "some relief on the *merits* of his claims." *Hanrahan v. Hampton,* 446 U.S. 754, 757, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980) (per curiam) (emphasis added). The mere attainment of remand or new trial will not ordinarily support an award of fees. *Swenson v. Heckler,* 801 F.2d 1079, 1080 (9th Cir. 1986) (unsigned order) (remand); *United States v. 2.61 Acres,* 791 F.2d 666, 672 (9th Cir.1985) (per curiam) (new trial). Instead parties must "achieve[ ] some of the benefit [they] sought in bringing suit," *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939, not merely an opportunity to seek that benefit anew. *See Jensen v. City of San Jose,* 806 F.2d 899, 901 (9th Cir.1986) (en banc).

■ We conclude, however, that the Federations are "prevailing parties" under EAJA with respect to the third claim. We determined that 16 U.S.C.

§ 839b(h)(11)(A)(ii) required the Commission to "consider the Council's Program to the fullest extent practicable" in evaluating all permit applications affecting the Columbia River and its tributaries. 801 F.2d at 1515. This determination supports an award of fees under the principles stated in *Mantolete v. Bolger,* 791 F.2d 784 (9th Cir.1986). *Mantolete* established a limited exception to the rule that a party who wins a new trial is not a "prevailing party" entitled to attorney's fees. We decided fees were warranted because:

> All of the issues on which Ms. Mantolete has prevailed involve[d] significant legal principles affecting the substantive rights of the parties. Our decision clarifie[d] and strengthen[ed] the right ... to be free from the kind of discrimination that the Rehabilitation Act was intended to eradicate. Our decision also impose[d] specific duties on federal employers to eliminate employment discrimination against handicapped individuals. The significance of this decision goes well beyond the particular facts of th[e] case.

*Id.* at 787.[3] The Federations' victory in this case is similar.

The very purpose of the Northwest Act, which authorized creation of the Council and directed the development of the Program, was to "protect, mitigate and enhance the fish and wildlife, including related spawning grounds and habitat, of the Columbia River and its tributaries," 16 U.S.C. § 839(6), and to aid in the development of hydroelectric power in the Columbia River Basin. *Id.* § 839(1); *see also* 801 F.2d at 1513. To effectuate these purposes, Congress required the Commission to "tak[e] into account at each relevant

---

**3.** In contrast, in *Chinese for Affirmative Action v. Leguennec,* 580 F.2d 1006, 1009 (9th Cir.1978), we denied fees to voting rights plaintiffs, although they won reversal of an order dismissing their complaint without prejudice and a ruling that good faith was no defense to their action, because "[n]o issue on the merits ha[d] been finally determined" and hence they were not prevailing parties. *Mantolete* distinguished this decision because it "only moved the plaintiffs one step closer to their goal" while Mantolete sought general relief concerning the Postal Service's discrimination against handicapped persons and "[o]ur decision, by establishing general standards that the federal government must fol-

low in employing all handicapped persons, grants such relief." 791 F.2d at 788.

The distinction between these cases lies in the relation of the relief sought to the results achieved. Mantolete sought, among other things, a declaration of rules under the Rehabilitation Act that would better protect jobseekers. She obtained that relief. *Id.* at 787–88. On the other hand, the *Leguennec* plaintiffs sought an order requiring the defendants to provide multilingual voting materials. 580 F.2d at 1008. Instead they won a determination the defendants' good faith was no defense to the suit. *Id.* at 1008–09.

stage of decisionmaking processes to the fullest extent practicable, the program adopted by the Council." 16 U.S.C. § 839b(h)(11)(A)(ii); 801 F.2d at 1514.[4]  By enforcing this obligation to consider the Council's Program, our decision provides all the substantive protection Congress itself afforded the fish and wildlife of the Columbia River Basin in the Northwest Act, and which the Federations sought under that Act.  Hence, our decision on this issue afforded "substantive" relief—relief "on the merits"—rather than "procedural" relief, in the same way a declaration that NEPA requires the preparation of an environmental impact statement is a "substantive" victory "on the merits" under EAJA. *Cf. Animal Lovers Volunteer Ass'n, Inc. v. Carlucci,* 867 F.2d 1224, 1225 (9th Cir. 1989) (unsigned order).

Our decision on the Federations' claim under the Northwest Act is like that in *Mantolete:* it "clarifies and strengthens" the environmental protections established by the Northwest Act; it "imposes specific duties" on the Commission to fulfill the purposes of the Act; and, because it will affect all hydropower licensing in the Columbia River Basin, it is of consequence "well beyond the particular facts of this case."  *Cf. Mantolete,* 791 F.2d at 787.

### IV.

The Commission may defeat the Federations' claim for attorney's fees if it can demonstrate its "position" was "substantially justified."  28 U.S.C. § 2412(d)(1)(A).  The standard is one of reasonableness:

the [connotation] most naturally conveyed by the phrase before us here is not 'justified to a high degree,' but rather 'justified in substance or in the main'— that is, justified to a degree that could satisfy a reasonable person.  That is no different from the 'reasonable basis both

in law and fact' formulation adopted by the Ninth Circuit....

*Pierce v. Underwood,* — U.S. —, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988); *see also Ramon–Sepulveda v. INS,* 863 F.2d 1458, 1459 (9th Cir.1988) (unsigned order).

To determine if the Government's position was "substantially justified," "we must look both to the position asserted by the government [below] as well as [to] the nature of the underlying government action at issue."  *Kali v. Bowen,* 854 F.2d 329, 332 (9th Cir.1988) (quoting *League of Women Voters v. FCC,* 798 F.2d 1255, 1258 (9th Cir.1986)); *see also United States v. Gavilan Joint Community College Dist.,* 849 F.2d 1246, 1248–49 (9th Cir.1988).  Thus we review the decision to ignore the Council's Program as well as the defense of that decision in this court.

There was no justification for the Commission's failure to consider the Council's Program.  801 F.2d at 1514.  The Northwest Act and decisions construing it clearly required the Commission to consider the Program at each relevant stage, and the Commission "never stated why the preliminary permit stage is not a 'relevant stage' within the meaning of the Northwest Power Act."  *Id.*  The Commission was simply unable to explain its failure to consider the Council's Program.

Hence, the Commission's position was not substantially justified.  In addition, no special circumstances exist which counsel against a fee award.  The litigation did not involve a close or novel question.  *Cf. Gavilan Joint Community College Dist.,* 849 F.2d at 1249.

### V.

Finally, we must determine the "reasonable" fee due the Federations under § 2412(d)(2)(A).

---

**4.**  As we noted earlier, "[t]he Council's Program expressly provided that regulators such as the Commission should 'review all applications or proposals for hydroelectric development in a single river drainage simultaneously' and 'assess cumulative environmental effects of existing and proposed hydroelectric development on fish and wildlife.'"  801 F.2d at 1514 (quoting Northwest Power Planning Council, Columbia River Basin Fish and Wildlife Program, § 1204(b)(1) (1982)).  Our decision requires the Commission to at least consider the Council's Program.  It may be that the Commission is also compelled either to engage in the comprehensive planning the Council's Program suggests (and which the Federations sought) or to provide an explanation of its refusal to do so that is sufficient to withstand review under the Administrative Procedure Act, 5 U.S.C. § 706 (1982).  *See* 801 F.2d at 1511–13.

The statute caps attorney's fees at $75 per hour. § 2412(d)(2)(A)(ii). This figure may be exceeded only upon a showing of a "special factor" or upon an adjustment for inflation. *Id.* The Federations argue fees in excess of the cap are warranted by three factors: the limited availability of qualified counsel; the experience, reputation and ability of their counsel; and the time and labor the case required.

The Supreme Court has rejected the ability of counsel and the difficulty of the case as factors justifying an excess award. In *Pierce,* the Court wrote:

> The "novelty and difficulty of issues," "the undesirability of the case," the "work and ability of counsel," and "the results obtained," ... are factors applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are.

108 S.Ct. at 2554.

■ However, the Federations' difficulty in finding qualified counsel may justify a higher fee. Section 2412(d)(2)(A)(ii) allows fees in excess of $75 per hour if "the court determines that ... a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." As the Court said in *Pierce:*

> We think [§ 2412(d)(2)(A)(ii)] refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question.... Examples ... would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.

108 S.Ct. at 2554. We think the Federation has shown that their counsel possesses "distinctive knowledge or specialized skill."

The Federations have demonstrated that their attorney, Terence Thatcher, is an environmental specialist who has devoted himself to the complex regulatory issues involved in hydropower regulation and public land forestry. The Commission presented no evidence to the contrary. Like pat-

ent law and foreign language skill—compensable specialties identified by the Court —this specialty requires knowledge not readily available to one possessing "general lawyerly knowledge and ability." *Id.* Instead it requires specialized legal expertise as well as the mastery of a technical subject matter gained by the investment of time and energy. We believe this investment, like that made by a patent attorney or a speaker of a foreign tongue, is compensable under § 2412(d)(2)(A)(ii) at a rate exceeding the $75 cap.

The Federations' evidence shows practitioners in Mr. Thatcher's specialty charge market rates between $100 and $150 per hour. It presents affidavits of two attorneys who charge $100 per hour for similar work. Given Mr. Thatcher's greater experience in this field, the Federations' request for $125 per hour is reasonable.[5]

■ The Federations have documented a total of 140.25 hours of attorney services. They may not be compensated for all these hours because "reasonable hours" do not generally include those spent on unsuccessful or unreached claims. *Hensley,* 461 U.S. at 434–35, 103 S.Ct. at 1939–40. A court may consider such hours, however, if related to the successful claims through "a common core of facts" or via "related legal theories." *Id.* at 435, 103 S.Ct. at 1940. Each of the Federations' claims was based on a distinct statute and sought different relief: for example, the NEPA claim sought an environmental assessment while the Northwest Act claim sought to compel consideration of the Council's Program. We conclude the unreached claims are insufficiently related to the successful claims to be compensable.

The Federation also seeks compensation for 14 hours expended in litigation of this motion for fees. As the Commission concedes, reasonable time spent litigating a fee award may be compensable. *See, e.g., Cinciarelli v. Reagan,* 729 F.2d 801, 809 (D.C.Cir.1984). We have applied the substantial justification test to the fee litigation; if opposition to attorney's fees is sub-

---

5. While the Federation would be entitled to an adjustment of the $75 cap for inflation if they were subject to it, *see Ramon–Sepulveda,* 863 F.2d at 1463–64, the rate to which they are entitled because of special factors exceeds the inflation-adjusted cap. *See id.* Accordingly, we do not reach the parties' arguments regarding the calculation of the inflation adjustment.

stantially justified, response to that opposition is not compensable. *See, e.g., Wolverton v. Heckler,* 726 F.2d 580, 583–84 (9th Cir.1984).

 We conclude the government's opposition to this fee award is substantially justified under the reasonableness test of *Pierce.* The Commission's arguments regarding the prevailing party issue, the cost of living adjustment, and the compensation of services regarding unreached claims raised issues new in this Circuit. We therefore exclude the litigation of this fee award from the total hours requiring compensation.

In sum, the Federations are entitled to compensation at $125 per hour for the services provided to state their successful claim under the Northwest Act. However, the documentation provided with the Federations' motion is insufficiently specific to permit us to determine the number of compensable hours. Therefore, we will award fees in a sum to be determined upon our receipt of an application detailing compensable hours. This application shall be filed within 14 days of this opinion. The Commission shall have 7 days to respond if it wishes to do so.

SO ORDERED.