933 F.2d 781
 Selwyn A. ROBINSON, Trustee under the Will of Alymer F.
Robinson; Eleanor Robinson, Trustee under the Will of
Aylmer F. Robinson; Bruce R. Robinson, Trustee under the
Will of Aylmer F. Robinson; Russell S. Robinson; Helen M.
Robinson, Individually and as Executrix of the Estate of
Lester B. Robinson; Ruth R. Le Fiell; Marion R. Keat;
Jean R. Weir; Keith P. Y, Plaintiffs,
v.
George R. ARIYOSHI, Governor; Ronald Y. Amemiya, Attorney
General; Andrew S.O. Lee; William Y. Thompson; Stanley W.
Hong; Larry E. Mehau; Manuel Moniz, Jr.; Moses W.
Kealoha; Takeo Yamamoto, Chairman and Members, Board of
Land and Natural Resources, State of Hawaii, as succeeded by
John D. Waihee, Governor, State of Hawaii, Warren Price,
III, Attorney General, State of Hawaii, William W. Paty,
John Y. Arisumi, Herbert Y. Arata, J. Douglas Ing, Moses W.
Kealoha and Leonard H. Zalopany, Chairman and Members, Board
of Land and Natural Resources, State of Hawaii, Defendants-Appellants,
v.
McBRYDE SUGAR COMPANY, LTD., Olokele Sugar Company, Ltd.;
Ida Albarado; Helen B. Chu; Henry J. Chu; Chee Kung Fui
Society; Lapaz Francisco; Marcelino Francisco; Albert K.
Kaailau; Linda P. Kaiakapu; Ann N. Kali; Harriet U. Kano;
Junichi Kano; Kiyoshi Kimata; Arnold W.F. Leong;
Katherine A. Leong; Lo Sun D. Leong; Tai Hung Leong;
Hanayo T. Naumu; Wallace A. Naumu; Hideo Nonaka; Hiromi
Nonaka; Iwao Nonaka; Kazuo Nonaka; Masatoshi Nonaka;
Shigekichi Nonaka; Takano Nonaka; and Tadao Nonaka,
Defendants-cross-claimants-Appellees.
 No. 89-15301.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 20, 1991.
Decided May 21, 1991.
 
 Steven S. Michaels, Deputy Atty. Gen., Honolulu, Hawaii, for defendants-appellants.
 J. Russell Cades, Roberet B. Bunn, Gino L. Gabrio, Phillip J. Leas, Cades, Schutte, Fleming & Wright, Honolulu, Hawaii, for defendants-cross-claimants-appellees.
 Appeal from the United States District Court for the District of Hawaii.
 Before GOODWIN and TANG, Circuit Judges, and GRANT, District Judge.*
 GOODWIN, Circuit Judge:
 
 
 1
 Defendant state officials appeal the judgment awarding attorney's fees under 42 U.S.C. Sec. 1988 to plaintiff landowners. The action was brought under 42 U.S.C. Sec. 1983 and led to lengthy litigation concerning water rights in the state of Hawaii. This court provided a detailed factual and procedural history of the underlying litigation in its decision on the merits in Robinson v. Ariyoshi, 887 F.2d 215, 216-18 (9th Cir.1989). The trial court's award of attorney's fees is also published. Robinson v. Ariyoshi, 703 F.Supp. 1412 (D.Hawaii 1989).
 
 
 2
 As a preliminary matter, the state officials have challenged the subject matter jurisdiction of the district court to award attorney's fees in this case. While the litigation was making its way through the state and federal courts, the Supreme Court in Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) shed new light on the doctrine of ripeness in federal litigation concerning regulatory confiscation of private property by state and local government entities. Williamson held that a plaintiff's "takings" claim is not ripe until "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Id. at 186, 105 S.Ct. at 3116. With instructions to reconsider the matter in light of Williamson, the Supreme Court vacated this court's affirmance of an earlier decision for plaintiffs. Ariyoshi v. Robinson, 477 U.S. 902, 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986). The victories won by plaintiffs were thus swept away by application of the ripeness doctrine.
 
 
 3
 Contending that plaintiffs ultimately failed to obtain judicial relief because of the lack of ripeness of their claims, defendants assert that the trial court did not have subject matter jurisdiction to award fees earned in some of the interlocutory proceedings that were completed before the litigation was put to rest. Because we deny relief to plaintiffs on the ground that they were not "prevailing parties" within the meaning of section 1988, we do not need to decide the point at which the district court lost jurisdiction to award fees.
 
 
 4
 Under section 1988, a prevailing party is one who "has prevailed on the merits of at least some of his claims." Hanrahan v. Hampton, 446 U.S. 754, 758, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980) (per curiam). A plaintiff who has not obtained final relief on the merits may nevertheless "prevail" for purposes of section 1988 "by establishing a 'clear, causal relationship between the litigation brought and the practical outcome realized.' " Ward v. County of San Diego, 791 F.2d 1329, 1334 (9th Cir.1986) (quoting Rutherford v. Pitchess, 713 F.2d 1416, 1419 (9th Cir.1983)), cert. denied, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). The Supreme Court phrased the inquiry to be whether plaintiff has " 'succeed[ed] on any significant issue in litigation which achieve[d] some of the benefit [he] sought in bringing suit.' " Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir.1978)). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." Texas State Teachers Ass'n v. Garland Indep. School Dist., 489 U.S. 782, 792-93, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989).
 
 
 5
 When the district court enjoined enforcement of the state court decision in McBryde Sugar Co. v. Robinson, 54 Haw. 174, 504 P.2d 1330 (1973), plaintiffs won the relief they sought. In McBryde, the Supreme Court of Hawaii declared that the state of Hawaii owned all the water in the Hanapepe River, that the English common-law doctrine of riparian rights governed the use of Hawaii's stream waters, and that plaintiffs could not transport water out of the watershed. This court's subsequent reversal of the federal injunction on ripeness grounds, however, undercut plaintiffs' victory for the purposes of section 1988.
 
 
 6
 The fact of the reversal is not, in itself, dispositive; if the injunction had been vacated on mootness grounds, the victory could nevertheless be compensable. See Dahlem v. Board of Educ. of Denver Public Schools, 901 F.2d 1508, 1510, 1512-13 (10th Cir.1990) (refusing to deny attorney's fees on the basis of a mooted preliminary injunction, where plaintiff won the relief he sought); Williams v. Alioto, 625 F.2d 845, 847 (9th Cir.1980) (per curiam), cert. denied, 450 U.S. 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981) (awarding plaintiff attorney's fees, even though the injunctive relief sought by plaintiff was vacated on grounds of mootness). The crucial question is whether the injunction actually benefitted McBryde in the sense of stopping present or preventing imminent government conduct alleged to be unlawful.
 
 
 7
 This court predicated its reversal of the district court judgment on the lack of ripeness for a "takings" claim. Assuming arguendo that reversal for lack of ripeness does not as a matter of law destroy plaintiffs' grounds for relief, it nevertheless makes plaintiffs' claim significantly weaker than those made in the mootness cases where the injunctions had real and palpable effects on the continuing or threatened government behavior.
 
 
 8
 Plaintiffs argue that, because of their efforts in this civil rights action, the state court decision in McBryde changed from a final, unfavorable judgment ripe for state enforcement to a decision that, according to the Hawaii Supreme Court itself, had no bar and merger effect and that, under standard property law, could never be enforced retroactively so as to take plaintiffs' vested property rights without compensation. According to plaintiffs, by virtue of their efforts in this litigation, the roadblock presented by McBryde is not as insurmountable as it was initially.
 
 
 9
 Because the state officials charged with implementing McBryde did not take action against them, and in fact had not even reached a final decision regarding implementation, plaintiffs' request for fees was based in effect on some favorable statements of law in opinions that had been vacated. The Supreme Court's decision in Hewitt v. Helms, 482 U.S. 755, 761-63, 107 S.Ct. 2672, 2676-77, 96 L.Ed.2d 654 (1987), instructs us to deny such a request.
 
 
 10
 Plaintiffs further claim to have won a compensable judicial admission from the attorney general of Hawaii, based on what appears to be a reversal from a former attorney general's position on McBryde. The original position was that "the State is the owner of the water"; the new position is that "the McBryde decisions, on their face, only recognize in a preliminary and tentative way the State's regulatory 'public trust' interest in the use of fresh waters." A mere "concession" as to the effects of future, unfiled legal proceedings, even if made by a responsible official, does not amount to "prevailing" in litigation in which the pleader took nothing.
 
 
 11
 Plaintiffs next assert that they influenced the drafting of a state constitutional amendment and Hawaii's Water Code in their favor. Plaintiffs contend that if they had not sought to enjoin the enforcement of the state decree in McBryde, both the constitution and the code would have incorporated the unlimited, sua sponte holdings of the McBryde court with regard to Hawaii's ownership of the Koula and Hanapepe waters. At present, both the state constitution and the code avoid any declaration of ownership, stating instead that that issue is pending before the courts.
 
 
 12
 Although section 1988 permits the awarding of fees absent total or absolute relief from burden, see American Constitutional Party v. Munro, 650 F.2d 184, 187 (9th Cir.1981), we have seen no evidence that section 1988's generous attitude toward the award of fees goes so far as to mandate fee shifting in dismissed actions on the basis of the plaintiffs' contention, however reasonable, that the litigation staved off the likely course of unwanted events, in this case the incorporation of McBryde. If that were true, all plaintiffs would recover section 1988 fees; the mere filing of an action to enjoin government conduct enjoins that conduct for the duration of the action, or at least until the granting of a preliminary injunction.
 
 
 13
 Fees are generally awarded only where the plaintiff wins more than the delay that naturally accompanies the litigation; he must achieve some additional benefit. See, e.g., Dahlem, 901 F.2d at 1513 (holding that plaintiff was a prevailing party because, by obtaining a preliminary injunction, he achieved the purpose of the suit--to participate in sports during his senior year of high school); Grano v. Barry, 783 F.2d 1104, 1107-10 (D.C.Cir.1986) (holding that plaintiffs were prevailing parties because their federal suit to enjoin the issuance of a permit to demolish an historic tavern pending a general election preserved the status quo long enough to give the citizenry a chance to exercise its right to vote on the matter); Alioto, 625 F.2d at 847 (holding that plaintiffs were prevailing parties because the preliminary injunction gave them the precise relief sought--preventing the defendant police officers from continuing to stop and frisk any black male who had certain physical characteristics).
 
 
 14
 In the present case, plaintiffs have only speculated that the state constitution and code would have incorporated the sua sponte holdings of McBryde had they not brought the federal action. Such speculation does not amount to evidence of an earned, concrete benefit. Under these circumstances, where the alleged victory is the enactment's interruption or prevention, section 1988 fees are not within the contemplation of Congress. See Texas Teachers, 489 U.S. at 792, 109 S.Ct. at 1493 (remarking that a common sense or ordinary reading of section 1988 shows that "at a minimum, to be considered a prevailing party ... the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant.") (emphasis added).
 
 
 15
 Finally, plaintiffs claim to have achieved "a federal court decision and federally found facts, based largely on admissions and stipulations introduced of record, still available if the State Officials go too far." As stated above, this court may not grant attorney's fees on the ground that the requesting party has obtained a favorable judicial statement of the law. This court's decision in National Wildlife Fed'n v. F.E.R.C., 870 F.2d 542 (9th Cir.1989), is not to the contrary. In that case, attorney's fees were granted to plaintiffs who succeeded in having this court vacate certain permits issued by F.E.R.C. and remand for further proceedings. Unlike plaintiffs here, those in National Wildlife succeeded on the merits: the court issued a decision that clarified and strengthened the environmental law under dispute, imposed particular duties on the defendants, and promised to have legal consequences for persons not directly involved in the suit. 870 F.2d at 544-46.
 
 
 16
 In awarding attorney's fees to plaintiffs, the district court reacted to the "attitude of the Attorney Generals of Hawaii during the 15 years this case has been in litigation," an attitude that "forced [plaintiffs] to fight unceasingly for their very economic lives." Robinson, 703 F.Supp. at 1418. The court continued: "The State's Attorney Generals could have, at any time over the years after 1973, refused to take the 'judically stolen' water, could have made it clear that they felt the taking of those water rights was constitutionally unlawful ... and avoided all of the ... litigation that has followed." Id. The district court's sympathies, however well placed, were irrelevant to the narrow question of who prevailed in the litigation. Nothing in the legislative history or the statute itself suggests that Congress intended section 1988 fees to be used to sanction government officials for rigorously defending their right--or, better, exercising their duty--to enforce a judicial decree, whether or not that decree is ultimately declared unlawful.
 
 
 17
 The statutory fee for those who prevail in civil rights litigation is not authorized by general considerations of equity. To win fees, plaintiffs must prevail in some significant way. That did not happen in the case at bar. Plaintiffs "jumped the gun" in filing the underlying federal action; their action cannot be said to have vindicated, even minimally, their civil rights. See Jensen v. City of San Jose, 806 F.2d 899, 901 (9th Cir.1986). Accordingly, the award of section 1988 attorney's fees is
 
 
 18
 REVERSED AND VACATED.
 
 
 
 *
 Honorable Robert A. Grant, Senior United States District Judge, Northern District of Indiana, sitting by designation