**PORTLAND AUDUBON SOCIETY, Headwaters, The Wilderness Society, Sierra Club, Inc., Siskiyou Audubon Society, Central Oregon Audubon Society, Kalmiopsis Audubon Society, Salem Audubon Society, Umpqua Valley Audubon Society, Natural Resources Defense Council, Lane County Audubon Society, and Oregon Natural Resources Council, Plaintiffs,**

v.

**Manuel LUJAN, in his official capacity as Secretary, United States Department of Interior, Defendant,**

and

**Northwest Forest Resource Council, Huffman & Wright Logging Co., Freres Lumber Co., Inc., Lone Rock Timber Co., Inc., Scott Timber Co., Clear Lumber Manufacturing Corp., Yoncalla Timber Products, Inc., Cornett Lumber Company, Inc., Association of O & C Counties and Benton County, Douglas County Forest Products Company, Medford Corporation, Rogge Forest Products, Inc., Defendants–Intervenors.**

Civ. No. 87–1160–FR.

United States District Court, D. Oregon.

Oct. 31, 1994.

Victor M. Sher, Todd D. True, Sierra Club Legal Defense Fund, Inc., Seattle, WA, for plaintiffs Portland Audubon Soc., Headwaters, Wilderness Soc., Sierra Club, Inc., Siskiyou Audubon Soc., Cent. Or. Audubon Soc., Kalmiopsis Audubon Soc., Salem Audubon Soc., Umpqua Valley Audubon Soc., and Natural Resources Defense Council.

Michael D. Axline, Marianne Dugan, Deborah Mailander, Eugene, OR, for plaintiffs Lane County Audubon Soc. and Or. Natural Resources Council.

Kristine Olson Rogers, U.S. Atty., Thomas C. Lee, Larry A. Brown, Asst. U.S. Attys., Roger W. Nesbit, Sp. Asst. U.S. Atty., Portland, OR, for defendant.

Mark C. Rutzick, Portland, OR, for defendants-intervenors.

FRYE, District Judge.

The matters before the court are (1) the motion of the plaintiffs for fees and expenses under the Equal Access to Justice Act (# 885); (2) the motion of the defendant to dismiss claim for fees and expenses (# 928); and (3) the motion of the defendant to reinstate award of costs to defendant (# 929).

## BACKGROUND

Plaintiffs are the Portland Audubon Society, Headwaters, The Wilderness Society, Sierra Club, Inc., Siskiyou Audubon Society, Central Oregon Audubon Society, Kalmiopsis Audubon Society, Salem Audubon Society, Umpqua Valley Audubon Society, and the Natural Resources Defense Council.

On October 19, 1987, the plaintiffs filed this action alleging violations by the defendant, Manual Lujan, in his official capacity as Secretary of the United States Department of the Interior, of the National Environmental Policy Act (the NEPA), 42 U.S.C. §§ 4321 *et seq.;* the Oregon & California Lands Act (the O & C Act), 43 U.S.C. §§ 1181a *et seq.;* the Federal Land Policy and Management Act (the FLPMA), 43 U.S.C. §§ 1701 *et seq.;* the Migratory Bird Treaty Act (the MBTA), 16 U.S.C. §§ 703 *et seq.;* and the Administrative Procedure Act (the APA), 5 U.S.C. §§ 553 *et seq.*

On October 19, 1987, the plaintiffs filed their first claim for relief, alleging that the decision of the Oregon Director of the Bureau of Land Management (the BLM) on April 10, 1987 not to prepare a Supplemental Environmental Impact Statement prior to the completion of the Environmental Impact Statement, which was expected at that time to be completed by the fall of 1990, violated the requirements of the NEPA.

On December 21, 1987, Congress enacted Section 314 of the Department of the Interior and Related Agencies Appropriations Act, Pub.L. No. 100–446, 102 Stat. 1774, 1825 (1988), which barred certain environmental challenges to timber sales.

On May 18, 1989, this court filed an opinion, in which it stated:

> The Environmental Impact Statements prepared between 1979 and 1983 do not address the issues of adequate population size or the effects of habitat fragmentation upon the long-range survival of the spotted owl species. Neither does the Spotted Owl Environmental Assessment prepared in 1987. This is a significant omission from the Spotted Owl Environmental Assessment in light of the new information available at the time it was prepared.

> Since the Spotted Owl Environmental Assessment does not address the critical issues of adequate population size and the effects of habitat fragmentation upon the long-range survival of the spotted owl, the court concludes that the decision of the BLM not to supplement the Environmental Impact Statements prepared between 1979 and 1983 was arbitrary and capricious in light of the new, significant, and probably accurate information that the planned logging of spotted owl habitat raises uncertainty about the ability of the spotted owl to survive as a species.

*Portland Audubon Soc'y v. Lujan,* 712 F.Supp. 1456, 1485 (D.Or.1989). This court concluded, however, that Section 314, as enacted on December 21, 1987, and reenacted without change on September 27, 1988, barred the NEPA claim of the plaintiffs, and therefore the court did not order the BLM to comply with the requirements of the NEPA. *Id.* at 1488–89.

On September 6, 1989, the United States Court of Appeals for the Ninth Circuit (the Court of Appeals) issued a mandate affirming the conclusion of this court that Section 314 barred the NEPA claim of the plaintiffs. *Portland Audubon Soc'y v. Lujan,* 884 F.2d 1233 (9th Cir.1989), *cert. denied,* 494 U.S. 1026, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990). The Court of Appeals stated in its opinion that "[t]he district court's finding that plaintiffs' NEPA claim is based on 'new information' is not contested in this appeal. Instead, the argument is focused on whether plaintiffs challenge the plans or 'particular activities to be carried out under the existing plans.'" *Id.* at 1237. The Court of Appeals affirmed

this court's order denying relief to the plaintiffs under the NEPA. The Court of Appeals stated that "if plaintiffs were to succeed on the merits of their NEPA claim, [the] BLM would be required to suspend its management plans and prepare a supplemental EIS, addressing concerns about the northern spotted owl." *Id.* at 1239. The Court of Appeals, however, reversed the order of this court dismissing the claims of the plaintiffs under the MBTA, the O & C Act, and the FLPMA and remanded the action for further proceedings.

In a provision of Section 318, which went into effect on October 23, 1989, Congress referred to this action as follows:

> Without passing on the legal and factual adequacy of ... the December 22, 1987 agreement between the Bureau of Land Management and the Oregon Department of Fish and Wildlife for management of the spotted owl, the Congress hereby determines and directs that management of areas according to subsections ... (b)(5) of this section on ... Bureau of Land Management lands in western Oregon known to contain northern spotted owls is adequate consideration for the purpose of meeting the statutory requirements that are the basis for ... the case *Portland Audubon Society et al., v. Manuel Lujan, Jr.,* Civil No. 87–1160–FR. *The guidelines adopted by subsection[ ] ... (b)(5) of this section shall not be subject to judicial review by any court of the United States.*

Section 318(b)(6)(A) (emphasis added).

On December 21, 1989, this court granted the motion of the defendant to dismiss all claims pursuant to Section 318 and entered judgment for the defendant based upon the conclusion of the court that Section 318 barred this action and that Section 318 was constitutional. *Portland Audubon Soc'y v. Lujan,* 1989 WL 155694, 21 Envtl.L.Rep. 20,018 (D.Or. Dec. 21, 1989).

On May 1, 1990, this court denied an application by the plaintiffs for attorney fees and expenses on the grounds that at that stage of the litigation the plaintiffs were not the prevailing parties.

On October 30, 1990, the Court of Appeals reversed this court's judgment in favor of the defendant, finding subsection (b)(6)(A) of Section 318 to be unconstitutional in that it violated the doctrine of the separation of powers. The action was then remanded to this court for further proceedings. *Seattle Audubon Soc'y v. Robertson,* 914 F.2d 1311 (9th Cir.1990).

On May 23, 1991, the plaintiffs sought leave to file an amended complaint in order to reallege their first claim for relief under the NEPA challenging certain decisions that the BLM had made to proceed with logging in northern spotted owl habitat without preparing Supplemental Environmental Impact Statements to take into account new information concerning the potential for the extinction of the northern spotted owl. This court denied the motion of the plaintiffs to file an amended complaint on the grounds that Section 318 was a bar to the NEPA claim proposed by the plaintiffs.

On December 23, 1991, the Court of Appeals reversed this court's conclusion that Section 318 was a bar to the NEPA claim proposed by the plaintiffs and remanded the case to this court with instructions to grant leave to the plaintiffs to file an amended complaint. *Seattle Audubon Soc'y v. Evans,* 952 F.2d 297 (9th Cir.1991).

On January 29, 1992, the plaintiffs filed an amended complaint for declaratory and injunctive relief alleging, in part:

BLM's sale and destruction of habitat suitable for the northern spotted owl and other habitat that may affect the owl, and BLM's adoption of management strategies for the spotted owl that include continued logging of such habitat, constitute major federal actions affecting the quality of the human environment under NEPA.

BLM's sale and destruction of suitable spotted owl habitat, and habitat that may affect owls, causes cumulative, synergistic, and indirect effects that have not been examined in an EIS, nor in any other adequate NEPA document.

Significant new information regarding the habitat requirements of the northern spotted owl has been developed since the preparation of BLM's, TMPs and EISs.

The decision of the BLM to proceed with continued destruction of such habitat, without preparing an EIS which considers this significant new information regarding the effects of such destruction on the spotted owl, violates NEPA and its implementing regulations, and is subject to judicial review under the APA.

Amended Complaint, p. 21, ¶¶ 38–40.

In their amended complaint, the plaintiffs requested that the court "[d]eclare that BLM's sales of timber from spotted owl habitat and from areas that may affect the owl, without an EIS examining new information on the effects of logging on the spotted owl, violates NEPA and its implementing regulations" and "[i]ssue a ... permanent injunction prohibiting BLM from allowing any land-altering operations on any timber sale awarded after January 1, 1992, in spotted owl habitat or ... that may affect spotted owls as determined by BLM pursuant to 16 U.S.C. § 1536(a)(2)." *Id.* at p. 23, ¶¶ 43(A) and (E).

On January 29, 1992, the plaintiffs filed a renewed motion for a preliminary injunction seeking to prohibit the BLM from offering or awarding, or allowing any logging operation or land-altering activity to occur, in connection with any timber sale not awarded prior to January 1, 1992. The court found that the plaintiffs had shown a likelihood that they would prevail on their NEPA claim, and that the probability of irreparable injury to them outweighed any adverse effects from the issuance of an injunction. The court entered an injunction pending the resolution of plaintiffs' motion for summary judgment on the NEPA claim as follows:

IT IS HEREBY ORDERED that ... [f]ederal defendants (collectively, the BLM) are hereby enjoined from offering or awarding, or allowing any logging operations or land-altering activities to occur in connection with, any timber sale not awarded prior to 1992 that:

A. would log suitable habitat for the northern spotted owl, defined by the U.S. Fish & Wildlife Service (FWS) as follows:

Suitable owl habitat has moderate to high canopy closure (60 to 80 percent); multi-layered, multi-species canopy dominated by large (> 30 inches in diameter at breast height (dbh)) overstory trees; a high incidence of large trees with various deformities (e.g., large cavities, broken tops, dwarf-mistletoe infections, and other evidence of decadence); numerous large snags; large accumulations of fallen trees and other woody debris on the ground; and sufficient open spaces below the canopy for owls to fly.

55 Fed.Reg. 26114, 26116 (1990); or

B. "may affect" the northern spotted owl, as determined by the BLM pursuant to 16 U.S.C. § 1536(a)(2) and implementing regulations thereunder.

Order Granting Plaintiffs' Motion for Renewed Preliminary Injunction, pp. 3–4.

On March 25, 1992, the United States Supreme Court reversed the decision of the Court of Appeals in *Seattle Audubon Soc'y v. Robertson,* 914 F.2d 1311 (9th Cir.1990). In *Robertson v. Seattle Audubon Soc'y,* —— U.S. ——, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992), the Supreme Court rejected the determination of the Court of Appeals that Section 318 was unconstitutional because it violated the doctrine of separation of powers of the United States Constitution. The Supreme Court found that Section 318 did not violate the doctrine of separation of powers of the United States Constitution because it amended applicable law. The Supreme Court remanded the case to the Court of Appeals for further proceedings.

On June 8, 1992, this court entered an order of summary judgment in favor of the plaintiffs. The court concluded:

Nothing has occurred in the scientific arena since May, 1989 to relieve the BLM of its obligation under NEPA to reexamine the environmental impacts of the decisions it made from 1979 to 1983 without consideration of the survival of the northern spotted owl as a subspecies. The developments in the scientific community have only confirmed the need for a Supplemental Environmental Impact Statement.

. . . .

The situation that the BLM is in is precisely the situation in which a Supplemental Environmental Impact Statement is necessary. More than a decade after the environmental impacts of the Timber Management Plans were assessed, the BLM has neither addressed the effects of its timber sales on the survival of the northern spotted owl as a subspecies in a NEPA document, nor promised such a NEPA document until mid–1993 at the earliest.

. . . .

There is no defense for the BLM's failure to comply with NEPA, and there will be no opportunity for the BLM to comply with NEPA after the agency's proposed actions are taken.

*Portland Audubon Soc'y v. Lujan,* 795 F.Supp. 1489, 1500, 1501, 1509–10 (D.Or. 1992).

On January 5, 1994, the court entered judgment in favor of the plaintiffs, stating:

IT IS HEREBY ORDERED and ADJUDGED that:

1. Defendant (hereinafter BLM) is enjoined from offering or awarding timber sales, or allowing any logging operations or land-altering activities in connection with any timber sale not awarded prior to 1992, that:

A. would log suitable habitat for the northern spotted owl, defined by the U.S. Fish & Wildlife Service (FWS) as follows:

Suitable owl habitat has moderate to high canopy closure (60 to 80 percent); multi-layered, multi-species canopy dominated by large (> 30 inches in diameter at breast height (dbh)) overstory trees; a high incidence of large trees with various deformities (e.g., large cavities, broken tops, dwarf-mistletoe infections, and other evidence of decadence); numerous large snags; large accumulations of fallen trees and other woody debris on the ground; and sufficient open spaces below the canopy for owls to fly.

55 Fed.Reg. 26114, 26116 (1990); or

B. "may affect" the northern spotted owl, as determined by the BLM pursuant to 16 U.S.C. § 1536(a)(2) and implementing regulations thereunder.

This injunction shall remain in effect until the BLM submits to this court a Supplemental Environmental Impact Statement or its functional equivalent which examines new information on the effects of logging on the northern spotted owl subspecies as required by NEPA.

2. The court will retain jurisdiction to enforce the terms of its injunction and to hear and resolve any applications for fees and costs.

Judgment, pp. 2–3.

On July 8, 1993, the Court of Appeals affirmed the judgment in all respects, concluding that:

[I]f we were to allow the BLM to continue to log in owl habitat pursuant to the old plans, pending finalization of the new Resource Management Plans, we would sanction the BLM's deliberate, protracted refusal to comply with applicable environmental laws, and countenance irreparable harm to plaintiffs.

*Portland Audubon Soc'y v. Babbitt,* 998 F.2d 705, 710 (9th Cir.1993).

On February 4, 1994, the plaintiffs moved for an award of attorney fees and expenses under the Equal Access to Justice Act (the EAJA), 28 U.S.C. § 2412(b), (d)(1)(A), in the sum of $1,631,548.70.

## CONTENTIONS OF THE PARTIES

The plaintiffs seek a base award of $1,057,527.80 for work performed by attorneys during the six years of this litigation and $38,245.56 in expenses. The plaintiffs also seek a multiplier of 2.0 to compensate them for non-fee application time spent prosecuting this case subsequent to May 18, 1989, the date that this court filed its opinion. The multiplier, if allowed, would add $526,825.40 to the base award.

The defendant contends that this court should not award any attorney fees or costs to the plaintiffs.

The defendant contends that this litigation must be considered by the court as two separate civil actions. The defendant explains that the action which was filed on October 10, 1987 was dismissed, and the dismissal was affirmed by the United States Supreme Court. The defendant argues that the plaintiffs did not prevail on that "first case" (Defendant's Response, p. 3), and no fees and expenses should be awarded for that "first case."

The defendant further contends that the litigation that ensued after October 30, 1990, which was initiated by a pleading styled the first amended complaint, was actually a separate case. The defendant contends that his position in this "new civil action" (Defendant's Response, p. 2) was substantially justified at all phases of the litigation, and therefore an award of attorney fees is not warranted by the statute.

In addition, the defendant contends that the plaintiffs have failed to sustain their burden of showing that the attorney fees claimed were actually incurred.

## APPLICABLE LAW

The Equal Access to Justice Act (the EAJA) provides that courts "shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action...." 28 U.S.C. § 2412(d)(1)(A).

In order to receive an award of attorney fees and other expenses, the plaintiffs must establish that they were "prevailing part[ies]" in the underlying suit. 28 U.S.C. § 2412(d)(1)(A). In *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), the Court explained: "A typical formulation is that plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." (Internal quotations omitted). "A prevailing party is one who succeeds on any significant issue even though other issues are

unreached, remanded, or prove unsuccessful." *National Wildlife Fed'n v. Federal Energy Regulatory Comm'n,* 870 F.2d 542, 544 (9th Cir.1989).

## ANALYSIS

### 1. *Prevailing Party*

■ The plaintiffs commenced this action on October 19, 1987 to compel the BLM to comply with the NEPA and other environmental laws by preparing a Supplemental Environmental Impact Statement to examine new information on the effects of planned logging on the northern spotted owl. This court wrote in an opinion filed on June 8, 1992:

The issue before the court *is and has always been* whether the decision of the BLM on April 10, 1987 not to supplement the Environmental Impact Statements it prepared between 1979 and 1983 was "arbitrary and capricious in light of the new, significant, and probably accurate information that the planned logging of spotted owl habitat raises uncertainty about the ability of the spotted owl to survive as a species." *Portland Audubon Soc'y v. Lujan,* 712 F.Supp. 1456, 1485 (D.Or.1989).

*Portland Audubon Soc'y v. Lujan,* 795 F.Supp. 1489, 1500 (D.Or.1992) (emphasis added).

On January 5, 1994, judgment was entered for the plaintiffs. The injunction was to remain in effect "until the BLM submits to this court a Supplemental Environmental Impact Statement or its functional equivalent which examines new information on the effects of logging on the northern spotted owl subspecies as required by NEPA." *Id.* at 3. The plaintiffs have prevailed on the merits of this case.

■ There is no reason for this court to limit the award of attorney fees to hours expended by attorneys after October 30, 1990, when the Court of Appeals in *Seattle Audubon Soc'y v. Robertson,* 914 F.2d 1311 (9th Cir.1990) remanded the case. Judgments do not become final within the meaning of the EAJA, 28 U.S.C. § 2412(d), until after the time for appeal has run. *See, e.g.,*

*Melkonyan v. Sullivan,* 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

The plaintiffs appealed from the judgment of this court entered on December 21, 1989. The Court of Appeals reversed this court and remanded for further proceedings. *Seattle Audubon Soc'y v. Robertson,* 914 F.2d 1311, 1317 (9th Cir.1990). *Seattle Audubon Soc'y v. Robertson* was later reversed by the United States Supreme Court in *Robertson v. Seattle Audubon Society,* —— U.S. ——, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992).

The Supreme Court did not order the Court of Appeals to reinstate the judgment of this court of December 21, 1989 and did not direct the Court of Appeals to enter a final judgment in favor of the defendant. The Supreme Court reversed and remanded the case for further proceedings. —— U.S. at ——, 112 S.Ct. at 1415. The Court of Appeals did not order reinstatement of the judgment of December 21, 1989. This court was asked by the defendant to reinstate the judgment of December 21, 1989 and specifically declined to do so, stating:

Initially, the BLM argues that the decision of the Supreme Court in *Robertson v. Seattle Audubon Soc'y,* —— U.S. ——, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992), requires reinstatement of the earlier order of dismissal of this action.

In *Robertson,* the Supreme Court reversed the decision of the Court of Appeals, which holds that Section 318 of the Department of the Interior and Related Agencies Appropriations Act of 1990 is unconstitutional. The Supreme Court concluded that Section 318 is constitutional in that it "compelled changes in law, not findings or results" in particular cases. *Id.* —— U.S. at ——, 112 S.Ct. at 1413.

The Supreme Court expressly stated that Section 318 "expired automatically on September 30, 1990, the last day of Fiscal Year 1990, except that timber sales offered under § 318 were to remain subject to its terms for the duration of the applicable sales contracts." *Id.* [—— U.S. at ——] 112 S.Ct. at 1410–11. This interpretation of the effect of Section 318 by the Supreme Court is consistent with the conclusion of the Court of Appeals that Section 318 ex-

pired at the end of fiscal year 1990 and that plaintiffs should be granted leave to amend their complaint to allege NEPA claims no longer barred by Section 318. *Seattle Audubon Soc'y v. Evans,* 952 F.2d 297 (9th Cir.1991).

Pursuant to the decision of the Court of Appeals, plaintiffs filed an amended complaint on January 29, 1992, which includes a renewed NEPA claim. The NEPA claim is now before this court, and nothing in the decision of the Supreme Court in *Robertson* requires that the amended complaint be dismissed.

*Portland Audubon Soc'y v. Lujan,* 795 F.Supp. at 1502.

At no time in the lengthy history of this case has there been a final, unappealable judgment entered on the merits of the NEPA claim of the plaintiffs, other than the judgment entered on January 5, 1994 granting to the plaintiffs the relief requested by them in their complaint. The claims in this action have been the same claims that were in the complaint when it was filed on October 19, 1987. There is no basis for the court to find that this action is in fact two actions, one action in which the defendant prevailed, and one action in which the plaintiffs prevailed. The final judgment in this case is in favor of the plaintiffs, and the plaintiffs are the prevailing party in this action.

2. *Substantial Justification and Bad Faith*

■ When a plaintiff prevails, fees and expenses are allowed "unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). The defendant bears the burden of demonstrating "substantial justification by a preponderance of the evidence." *Sierra Club v. Secretary of the Army,* 820 F.2d 513, 517 (1st Cir.1987).

■ "To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness...." *Pierce v. Underwood,* 487 U.S. 552, 566, 108 S.Ct. 2541, 2550–51, 101 L.Ed.2d 490 (1988). "Substantially justified" means:

"justified in substance or in the main"— that is, justified to a degree that could

satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue.

*Pierce,* 487 U.S. at 565, 108 S.Ct. at 2550. In order to avoid the payment of fees and costs, the defendant must meet the burden of showing that his position was substantially justified with respect to the position that he took and the conduct of the government which gave rise to the suit. *League of Women Voters v. FCC,* 798 F.2d 1255, 1259 (9th Cir.1986). The court "is to take into account the totality of the circumstances in deciding whether the government's position is substantially justified." *Bullfrog Films, Inc. v. Wick,* 959 F.2d 782, 784 (9th Cir.1992).

■ The defendant contends that the position taken by the government that no Supplemental Environmental Impact Statement should be prepared and timber management should continue without consideration of the existing new information regarding the spotted owl was substantially justified from the initial filing of this action until December 23, 1991. The defendant asserts that Section 314 became law on December 22, 1987, two months after this case was filed, and that Section 314 directed the defendant to take the position that a Supplemental Environmental Impact Statement was not required and that the BLM was to put all of its resources into the completion of the Resource Management Plans.

The defendant contends that his position from December 23, 1991 until July 8, 1993, when the opinion of the Court of Appeals was filed, was substantially justified because the BLM continued to work toward the completion of the new Resource Management Plans throughout this period. The defendant contends that his position throughout this litigation was not only substantially justified, but that he was directed by Congress to take such a position.

The plaintiffs argue that studies conducted by the BLM, the United States Forest Service, the United States Fish and Wildlife Service, and a number of other experts in the scientific community from 1982 through 1987

uniformly recognized that the logging of the habitat of the spotted owl threatened the ability of the spotted owl to survive as a species. The plaintiffs contend that the Environmental Assessment and the Record of Decision, which formalized the decision of the BLM not to prepare a new Environmental Impact Statement, was not substantially justified because it failed to even mention the cumulative impacts of logging on the spotted owl. The plaintiffs contend that the BLM failed to comply with the requirements of the NEPA throughout the lengthy period of this litigation, and that there was no justification—substantial or otherwise—for the refusal of the BLM to comply with the law.

In addition, the plaintiffs contend that the hours that were spent litigating the issues subsequent to this court's opinion of May 18, 1989 were a result of the bad faith of the defendant, and therefore the court should award full market rates, including a multiplier, for all non-fee application attorney hours spent prosecuting this case after May 18, 1989 pursuant to section 2412(b) of the EAJA. The plaintiffs contend that the refusal of the BLM to consider the new information as was required by law amounts to bad faith.

> On May 18, 1989, this court concluded that: [T]he decision of the BLM not to supplement the Environmental Impact Statements prepared between 1979 and 1983 was arbitrary and capricious in light of the new, significant, and probably accurate information that the planned logging of spotted owl habitat raises uncertainty about the ability of the spotted owl to survive as a species.

*Portland Audubon Soc'y v. Lujan,* 712 F.Supp. 1456, 1485 (D.Or.1989).

> On June 8, 1992, this court concluded:
> Nothing has occurred in the scientific arena since May, 1989 to relieve the BLM of its obligation under NEPA to reexamine the environmental impacts of the decisions it made from 1979 to 1983 without consideration of the survival of the northern spotted owl as a subspecies. The developments in the scientific community have only confirmed the need for a Supplemental Environmental Impact Statement.

*Portland Audubon Soc'y v. Lujan,* 795 F.Supp. 1489, 1500 (D.Or.1992).

On July 8, 1993, the Court of Appeals concluded that:

> [I]f we were to allow the BLM to continue to log in owl habitat pursuant to the old plans, pending finalization of the new Resource Management Plans, we would sanction the BLM's deliberate, protracted refusal to comply with applicable environmental laws, and countenance irreparable harm to plaintiffs.

*Portland Audubon Soc'y v. Babbitt,* 998 F.2d 705, 710 (9th Cir.1993).

On May 20, 1994, the defendant filed in this court a Final Supplemental Environmental Impact Statement and Notice of Satisfaction of Final Judgment. This notice included the document entitled Final Supplemental Impact Statement on Management of Habitat for Late–Successional and Old–Growth Forest Related Species Within the Range of the Northern Spotted Owl published in two volumes with map appendix in February of 1994.

During the more than six years that this litigation has been pending, the defendant has argued that the BLM was not required to prepare a Supplemental Environmental Impact Statement and not required to comply with the NEPA.

The language of Section 314 does not support the position by the defendant that the BLM was required to continue to sell timber, despite the lack of compliance with the NEPA, for more than six years. On December 21, 1987, Congress told the BLM that it was "to continue to complete as expeditiously as possible development of [the] Resource Management Plans to meet all applicable statutory requirements." Section 314. While Congress specifically allowed the BLM to "continue the management of lands within their jurisdiction under existing land and resource management plans pending the completion of new plans," *Id.,* this court and the Court of Appeals have repeatedly concluded that it was not reasonable for the BLM to continue to sell timber for six years after

Congress enacted Section 314 without completing the new plans.

Taking into consideration the totality of the circumstances, the facts, and the law as presented throughout the course of this litigation, the court concludes that the defendant cannot be relieved of the requirements of 28 U.S.C. § 2412(d)(1)(A) by a finding that the position of the United States was substantially justified or that special circumstances make an award of attorney fees unjust. The court concludes, however, that the plaintiffs are not entitled to enhanced fees under section 2412(b) on the grounds that the defendant acted in bad faith.

In summary, the court finds that the plaintiffs are entitled to an award of attorney fees and expenses under section 2412(d)(1)(A) of the EAJA.

### 3. *Amount of Fees and Expenses*

The court has concluded that the award of reasonable attorney fees and costs to the plaintiffs complies with the requirements of section 2412(d)(1)(A), and that there are no special circumstances which make an award of fees and expenses unjust.[1]

The court will proceed to determine the appropriate amount of fees to be awarded.

### A. *Political Arena*

■ The plaintiffs seek $11,033.10 in attorney fees for the time spent by Kevin Kirchner, a staff attorney in the office of the Sierra Club Legal Defense Fund in Washington, D.C., who has worked to stop legislation that would have prevented the plaintiffs from achieving the results sought and obtained in this court.

The defendant objects to this request for attorney fees on the grounds that section 2412 does not allow compensation to public interest groups for lobbying members of the legislative branch of government.

The plaintiffs contend that the work of Kirchner focused narrowly on achieving the litigation goals of the plaintiffs in this case and was crucial to the vindication of the rights of the plaintiffs.

From beginning to end, this case involves a unique interaction between the legislative, the executive, and the judicial branches of government. The outcome of this case (a matter for the judicial branch of government) was expressly addressed by Congress (the legislative branch of government) in the appropriation made for the executive branch of government in the Department of the Interior and Related Agencies Appropriations Act for Fiscal Year 1990, Pub.L. No. 101–121, 103 Stat. 701, 745–50 (1989)—also known as Section 318. When a legislature acts to affect the decision in a case pending before a judge, it is reasonable for the litigants to take notice.

However, the basic rule is that "[t]he EAJA does not serve to compensate public interest groups for their lobbying efforts, no matter how successful those efforts may be." *Forest Conservation Council v. Devlin*, 994 F.2d 709, 713 (9th Cir.1993). An award of attorney fees is limited to the fees incurred in this civil action only. The court will not award attorney fees for actions taken by the plaintiffs in the political or legislative arena.

### B. *Hourly Rates*

■ The plaintiffs request an hourly rate of $215 per hour for attorneys Victor Sher and Michael Axline, and an hourly rate of $205 per hour for attorney Todd True. Other counsel are billed by the plaintiffs at the rate of $117 per hour.

The defendant contends that the market rate for attorneys with the experience of Sher and Axline is $175 per hour, and that the hourly rate awarded should be less than the market rate, even if there is a special factor justifying a departure from the statutory cap of $75 per hour. The defendant suggests that the hourly rate for Sher and Axline should be $130 per hour, for True

---

1. The defendant contends that the plaintiffs are not entitled to recover fees and expenses because they have failed to show that they have incurred a debt to their counsel. Publicly funded legal services organizations may be awarded fees.

*Washington v. Seattle School Dist. No. 1*, 458 U.S. 457, 487 n. 31, 102 S.Ct. 3187, 3204 n. 31, 73 L.Ed.2d 896 (1982); *Dennis v. Chang*, 611 F.2d 1302, 1306 (9th Cir.1980); *Brandenburger v. Thompson*, 494 F.2d 885, 889 (9th Cir.1974).

$115 per hour, and for all other junior associate attorneys $90 per hour.

28 U.S.C. § 2412(d)(2)(A) states, in part:
"[F]ees and other expenses" includes ... reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.)

■ The enhancement of the hourly rate is appropriate where (1) the attorney possesses some distinctive knowledge or specialized skill; (2) that distinctive knowledge or specialized skill is needed in the litigation; and (3) attorneys with such skill or knowledge are not available at the statutory rate. Environmental litigation has been recognized as "an identifiable practice specialty that requires distinctive knowledge." *Love v. Reilly,* 924 F.2d 1492, 1496 (9th Cir.1991).

Enhanced rates for attorneys Sher, Axline and True have been recognized in a number of other cases, including *Seattle Audubon Soc'y v. Evans,* 771 F.Supp. 1081 (W.D.Wash. 1991), *Northern Spotted Owl v. Lujan,* 758 F.Supp. 621 (W.D.Wash.1991), and *Pilchuck Audubon Soc'y v. MacWilliams,* No. C87–1707R, 1988 WL 159927 (W.D.Wash.). Each of the lawyers involved have the specialized skills that are required for this type of litigation. Counsel with the abilities required for this litigation are not available at the statutory rate. This court has reviewed the affidavits and the qualifications of attorneys Sher, Axline and True and finds that enhanced fee rates are appropriate because lawyers with their skills are not available at statutory rates.

In *Seattle Audubon Soc'y v. Evans,* 771 F.Supp. 1081, Sher sought and received compensation at the rate of $205 per hour and True at the rate of $195 per hour. This court has examined the issue independently and finds that the rates that are appropriate in this case are the same rates deemed appropriate in the *Seattle Audubon* case. The

court finds that Sher is entitled to be compensated at the rate of $205 per hour and True and Axline at the rate of $195 per hour.

The remaining attorneys are reasonably compensated as requested at the inflation-adjusted EAJA base rate of $117 per hour.

### C. *Compensable Hours*

■ The defendant contends that the time records of the attorneys for the plaintiffs fail to meet community standards for billing an adverse party. The defendant argues that the attorneys, the resource analyst, and the law clerks have failed to identify the claims upon which they have worked, and the legal interns have failed to submit itemized time records. The defendant argues that the fee demand of the plaintiffs should be substantially reduced because of poor documentation and recordkeeping.

The defendant also contends that the fees awarded should be reduced because (1) the plaintiffs prevailed only on the NEPA claim; (2) the hours relating to work directed toward the intervenors are not hours properly charged to this defendant; and (3) the demands of the plaintiffs contain several examples of clerical tasks billed at professional and paralegal rates.

The plaintiffs contend that the law does not require the level of detail in an attorney fee application that the government argues must be met. The plaintiffs contend that the court in *Seattle Audubon Soc'y* approved identical documentation as more than sufficient to support an award of attorney fees. The plaintiffs argue that while the defendant takes issue with their method of documentation, none of the affidavits presented by the defendant contains any argument that a particular time claimed by counsel for the plaintiffs is excessive. The plaintiffs argue that the reasonableness of the overall fee application is the ultimate issue before the court, and that there are no affiants who state that the overall fee is excessive.

The plaintiffs contend that they are entitled to be fully compensated for work on all claims; that they are entitled to recover fees for opposing the position of the intervenors which were closely aligned with the position of the defendant; and that the time records meet the requirements of the EAJA and

demonstrate that the plaintiffs seek compensation for a reasonable number of hours at reasonable rates.

In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the United States Supreme Court set the standards for reviewing applications for attorney fees in a fee-shifting case. The Court "reemphasize[d] that the district court has discretion in determining the amount of a fee award." *Id.* at 437, 103 S.Ct. at 1941. "Plaintiff's counsel ... is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Id.,* at 437 n. 12, 103 S.Ct. at 1941 n. 12.

■■■■ Reconstructed hours may form the basis for fee awards if the reconstruction is sufficiently detailed, particularly in the public interest cases where the attorney does not bill on a regular basis. *Davis v. City and County of San Francisco,* 976 F.2d 1536, 1541 (9th Cir.1992). A court familiar with the case should not be asked to engage in an "hour-by-hour analysis of the fee request." *Gates v. Deukmejian,* 987 F.2d 1392, 1399 (9th Cir.1992). The district court has a "great deal of discretion in determining the reasonableness of the fee and, as a general rule, [the appellate court] defer[s] to its determination, including its decision regarding the reasonableness of the hours claimed by the prevailing party." *Id.* at 1398.

Having reviewed the submissions of the plaintiffs and the record in this case, and being familiar with the entire history of this litigation, this court agrees with the wording of the court in *Seattle Audubon Soc'y* that the documentation provided by the plaintiffs to support the number of hours claimed is "more than sufficient for the Court to determine the reasonableness and the appropriateness of the fees sought." *Seattle Audubon Soc'y v. Evans,* Amended Report and Recommendation, October 29, 1993, p. 59.

■■■■ Where a plaintiff has obtained excellent results, his attorneys should recover a fully compensatory fee. *Hensley v. Eckerhart,* 461 U.S. at 435, 103 S.Ct. at 1940. However, "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440, 103 S.Ct. at 1943. This court finds that the non-NEPA claims were closely connected with the NEPA claims, and that the issues related to the intervenors are connected in all respects with the successful claims against the defendant. There is no basis for this court to reduce the award of attorney fees in this case because those fees include any claims or parties "distinct in all respects" from the successful claims against the defendant. *Id.*

■■■■ The court has reviewed the objections made on an hour-by-hour basis to the time records of the individual attorneys, Sher, Axline, True, Yackulic and Antolini. The court finds no factual reason for it to reduce the request for attorney fees by an hour of time here and an hour of time there. The plaintiffs have adequately addressed in the reply memorandum the issues raised by the defendant in his response. The court will, however, reduce the hours claimed by Sher by 34 hours, the time that he spent on administrative proceedings on the grounds that 28 U.S.C. § 2412(d)(1)(A) limits the recovery of fees and expenses to those incurred in this judicial action.

### D. Resource Specialist Claim

■■■■ The defendant contends that the plaintiffs should not be awarded compensation for any hours of time spent by Richard Stahl. The defendant argues that since Stahl is employed by the Sierra Club Legal Defense Fund in Seattle, Washington as a resource analyst, the claim is merely an overhead expense of the Sierra Club Legal Defense Fund in Seattle, Washington.

28 U.S.C. § 2412(d)(2)(A) provides compensation to a prevailing party for the " 'fees and other expenses' [of the party] includ[ing] the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case...."

The cost of the services provided by Stahl as a resource analyst and forester was a cost necessary for the preparation of the plaintiffs' case. There is no basis for this court to conclude that the amount of time spent by

Stahl or his rate of compensation are not reasonable.

### E. Law Clerks and Legal Interns

██ The defendant objects to the request of the plaintiffs for compensation for law clerks and legal interns at the rate of $65 per hour. The defendant contends that $25 per hour is a reasonable hourly rate for legal interns and law clerks.

The defendant further objects to the documentation of hours by legal interns and argues that the maximum award for work by legal interns should be 200 hours at $25 per hour for a total of $5,000.

The plaintiffs contend that the time spent by legal interns was determined from identified documents that plainly show which legal intern assisted in the production of each document.

The defendant has submitted affidavits in which the affiants state that the market rate for law clerks is between $45 per hour and $65 per hour. See Affidavit of James L. Knoll and Affidavit of Gregory J. Miner. The plaintiffs have submitted an affidavit in which the affiant states, for example, that "[p]aralegal time for experienced paralegals with expertise in managing large cases is billed at $65.00 an hour or more at some firms in the Portland area." Affidavit of Gary M. Berne, p. 4.

The court finds that the documentation of the time spent for legal interns and law clerks is adequate. There is no indication that the individuals involved were "experienced paralegals with expertise in managing large cases." Affidavit of Gary Berne, p. 4. The statutory rate of compensation for attorneys under the EAJA is $75 per hour, or $117 per hour in this case after an adjustment for inflation. The court finds that the requested rate of $65 per hour for legal interns and law clerks is not reasonable given the statutory limitation upon attorney compensation. The court will award fees for law clerk and legal intern hours at the rate of $39 per hour, which is one-third of the inflation-adjusted rate of statutory compensation for attorneys. This rate takes into consideration the market rate for law clerks, the statutory scheme, and the role of legal interns and law clerks in this litigation.

### F. Fees for Fees

██ The plaintiffs are entitled to recover fees for the time spent applying for fees. See, e.g., INS v. Jean, 496 U.S. 154, 160–62, 110 S.Ct. 2316, 2320, 110 L.Ed.2d 134 (1990). The court finds that the documentation is adequate and that these fees are recoverable.

### G. Expenses

The court has reviewed the out-of-pocket expenses incurred by the plaintiffs and finds that they are adequately documented, reasonable, and fully reimburseable under the EAJA. Expenses in the amount of $38,-245.56 as requested in the motion and $949.78 for expenses incurred after the motion was filed are awarded to the plaintiffs.

### 4. Overall Amount of Award

The plaintiffs are entitled to recover "reasonable attorney fees." 28 U.S.C. § 2412(d)(2)(A).

██ "[T]he EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items." INS v. Jean, 496 U.S. at 160–62, 110 S.Ct. at 2320. The starting point for determining a reasonable fee is the "lodestar" figure, which is the number of hours reasonably expended multiplied by a reasonable hourly rate. City of Burlington v. Dague, —— U.S. ——, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

The lodestar figure in this case is calculated by the court as follows:

|  | Hours | Rate | Total |
|---|---|---|---|
| V. Sher | 739 + 1,266.5 + 96.5 + 117.25 − 34 = 2185.25 | $205 | $447,976.25 |
| M. Axline | 1665.4 + 80.25 = 1745.65 | $195 | 340,401.75 |
| T. True | 2.25 + 31.25 + 127.5 = 161 | $195 | 31,395.00 |
| C. Yackulic | 127 + 46 = 173 | $117 | 20,241.00 |
| D. Antolini | 38.5 + 21.5 = 60 | $117 | 7,020.00 |
| K. Boyles | 5.6 | $117 | 655.20 |
| L. Ziemer | 3 | $117 | 351.00 |
| SCLDF Law Clerks | 80 + 81.7 + 68.3 = 230 | $ 39 | 8,970.00 |
| Legal Interns | 833.5 | $ 39 | 32,506.50 |
| A. Stahl | 587.5 + 172.5 + 4 + 4 = 768 | $100 | 76,800.00 |
| TOTAL |  |  | $966,316.70 |

*See* Reply Declaration of Victor Sher, last page; Affidavit of Mike Axline, p. 16; Second Declaration of Michael Axline, p. 19.

There is a strong presumption that the lodestar fee represents a reasonable fee. *City of Burlington v. Dague,* —— U.S. at ——, 112 S.Ct. at 2641; *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986); *rev'd on other grounds after reh'g,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). The Supreme Court in *Hensley* noted, however, that the district court:

> should exclude from this initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.

461 U.S. at 434, 103 S.Ct. at 1940 (citation omitted).

■ In rare cases, this strong presumption may be rebutted through application of those factors not subsumed in the lodestar calculation. *D'Emanuele v. Montgomery Ward & Co.,* 904 F.2d 1379, 1384 (9th Cir. 1990). The factors subsumed in the lodestar calculation are set out in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th Cir. 1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), as follows:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* at 70 (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974)).

The court has reviewed the lodestar calculations and finds that it does not represent fees which are excessive, redundant or otherwise unnecessary. The court has reviewed and addressed all relevant *Kerr* factors in this opinion and concludes that there are no factors which rebut the presumption that the lodestar fee is a reasonable fee. In *Hensley,* the Supreme Court further noted:

> We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters. It remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award.

*Id.* 461 U.S. at 437, 103 S.Ct. at 1941.

### 5. *Reasons for the Fee Award*

■ The law provides that the plaintiffs are entitled to be compensated for their reasonable attorney fees. The hours expended and the hourly rates have been adequately documented by the plaintiffs. There are no factors which make an award based on the hours expended unreasonable. Furthermore, the hourly rates sought are reasonable. There is no basis for this court to arbitrarily grant to the plaintiffs some of the fees which they have documented and claimed and not other fees which they have documented and claimed. This litigation has been extensive, legally and factually complex, and contested at every turn. The issues were document intensive. A number of the issues were of first impression. This litigation could not have been "short-cut." This court knows firsthand the long hours of work it has taken to bring to an end the trial court aspect of this litigation. This is not a time to debate once again the merits of the case. This is a time to acknowledge the result obtained by the attorneys for the plaintiffs. The court finds that the lodestar figure represents a reasonable fee.

## CONCLUSION

The motion of the plaintiffs for fees and expenses under the EAJA (# 885) is granted. The motion of the defendant to dismiss claim for fees and expenses (# 928) is denied. The motion of the defendant to reinstate award of costs to defendant (# 929) is denied. The court awards attorney fees to the plaintiffs in the sum of $966,316.70 and expenses in the sum of $39,195.34.